STATE of Missouri, Respondent,

v.

Lloyd HUBBARD, Appellant.

No. WD 33323.

Missouri Court of Appeals,
Western District.

Oct. 11, 1983.

Larry O. Denny, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Raymond C. Bosch, Asst. Atty. Gen. (argued), Jefferson City, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

Defendant appeals his conviction by a jury of second degree burglary, in violation of § 569.170[1] for which he was sentenced to four years imprisonment. On appeal, the defendant complains of the state's display of a knife throughout his trial, and a demonstration of the use of the knife by the defendant, a portion of the prosecutor's closing argument, and the state's requiring the defendant to expose his tattooed arms in the presence of the jury. We affirm the conviction.

The following facts are relevant to the determination of the issues on appeal. On July 14, 1980, Margaret O'Connor observed two young men circling on bicycles in front of her house and surveying the neighborhood. She watched the men go behind the house of Kenneth and Pamela Sparks across the street. When the men did not reappear, Mrs. O'Connor went to the Burkhead house, next door to the Sparks'. At her behest, Mr. Burkhead went to the back of the Sparks' house to investigate while Mrs. O'Connor waited in the Burkhead's front yard. He saw no one.

Meanwhile, Mrs. O'Connor observed one of the two men appear from behind the Sparks' house riding one bicycle and carrying another. She then noticed someone lift a bedroom window blind. Thereupon, Mr. Burkhead instructed her to telephone the police. Mr. Burkhead proceeded to the front of the Sparks' house where he encountered the defendant armed with a knife leaving through the front door. At trial, witness Burkhead testified, without objection, that the defendant held the knife pointed at him causing Mr. Burkhead to raise his arms and retreat. At the prosecutor's request, he stood up and demonstrated how the defendant held the knife.[2] No objection was raised during the trial to either the demonstration or the presence or display of the knife. As shown by the testimony in footnote two, Mr. Burkhead identified the knife, Exhibit No. 5, as "very similar" to the knife defendant pointed at him, but at that time the state did not offer the knife into evidence.

In the last moments of the state's presentation of its evidence, Robert Martin, the

---

1. All sectional references are to the Revised Statutes of Missouri, 1978.

2. The "demonstration" of which defendant now complains is recorded in the transcript as follows: "Q. (Opened by Mr. Riederer) Now I'm going to hand you what has been marked as State's Exhibit No. 5 and ask you if you can identify that? A. It would have been very similar to the type of knife that was pointed at me at the time. Q. Can you demonstrate to me, to the judge, to the jury, how Mr. Hubbard held the knife? A. Just by standing like this."

arresting officer was called. The officer testified that he had retrieved a knife from the defendant's pocket and that Exhibit No. 5 "looks like the one I took from Mr. Hubbard at the scene." The state offered the knife into evidence. On voir dire of the witness on the question of the admissibility of the exhibit, the defendant established that the officer could not vouch for the chain of custody of the knife. Defense counsel also asked the witness the following:

Q. Are you saying that this is the same knife you took from the defendant?

A. No Counsel, I said it was similar.

Q. Could be a different knife; is that right?

A. It's possible.

Defendant then objected to the introduction of Exhibit No. 5. The court sustained the objection. Officer Martin then testified that be observed no difference between the State's Exhibit No. 5 and the knife he found on the defendant.

The knife apparently remained within the jury's view throughout the trial from the time it was marked for identification. At the close of the state's evidence, the defendant moved for a mistrial on the basis of the prejudicial effect of the knife being displayed throughout the trial.

Another neighbor, Bryan Sullivan, was driving south when he noticed the confrontation between the defendant and Burkhead. He stopped his truck directly in front of the Sparks' house and watched the defendant and his companion bicycle away.

Burkhead and Sullivan chased the defendant, confronted him and returned to the Sparks' house. Two police officers soon arrived. Sullivan and Burkhead accompanied the police on their search of the neighborhood. Sullivan sighted the defendant and identified him to Officer Martin. The officer apprehended the defendant hiding beneath a shade tree. He seized a knife from the defendant's pocket.

Upon arriving home, Pamela Sparks found her jewelry box in disarray and her jewelry scattered, although nothing was missing. The screen to the bedroom window had been cut and the window which had been closed when she left for work was found open.

In his first point defendant asserts that the trial court erred in refusing to sustain his motion for mistrial made after the state rested its case. In that motion, defendant complained of the prosecutor's display of the knife during the entire trial. In his later motion for a new trial defendant contended that the court's ruling was in error. On appeal, defendant expands the complaint to include for the first time the prosecutor's use of witness Burkhead's demonstration how defendant held the knife on Burkhead or swung it at him.

 If we are to review defendant's first point at all, we may do so only as a matter of grace or by invoking the plain error rule because defendant has not preserved his first point for review. Defendant's only objection was lodged at the close of the state's evidence, by way of the motion for mistrial. He based his motion solely on the continued display of the knife, not to the demonstration of its use. Because a point raised on appeal must be based upon the theory of the objection made at trial, *State v. Lang,* 515 S.W.2d 507, 511 (Mo. 1974), *State v. Byrnes,* 619 S.W.2d 791, 793 (Mo.App.1981), and because a party is not permitted to broaden the scope of his objection on appeal beyond that made at trial, *State v. Broadnax,* 572 S.W.2d 224, (Mo. App.1978), defendant did not preserve his error as to the "demonstration". Moreover, we must deem defendant's entire first point waived because his motion for mistrial was not timely. He had ample opportunity to complain of the display and demonstration prior to the close of the state's evidence. Thus, these errors are not preserved for review. *State v. Ricks,* 642 S.W.2d 375, 377 (Mo.App.1982). Aware of this, defendant suggests in his argument that his first point on appeal constitutes plain error.

 We have discretion to invoke the plain error rule under Rule 30.20. Appellate courts use the rule sparingly, however, and limit its application to those cases

where there is a strong, clear showing of manifest injustice or a miscarriage of justice. *State v. Harper*, 637 S.W.2d 170, 172 (Mo.App.1982); *State v. Sammons*, 640 S.W.2d 488, 490 (Mo.App.1982); *State v. Williams*, 637 S.W.2d 839, 841 (Mo.App. 1982); Rule 30.20. When guilt is established by overwhelming evidence, no injustice or miscarriage of justice will result from a refusal to invoke the rule. *Williams, supra* at 841; *State v. Tyler*, 622 S.W.2d 379, 383 (Mo.App.1981). Finally, the defendant bears the burden of proving that the alleged error amounted to manifest injustice. *State v. Berry*, 609 S.W.2d 948, 953 (Mo.1980) (en banc); *State v. Sanders*, 628 S.W.2d 390, 392 (Mo.App.1982); *Tyler, supra* at 383.

Despite his assertion of plain error, defendant never attempts to show that the alleged error caused manifest injustice. Defendant argues only that "the prejudicial affect the State's display of the knife had on the jury cannot be ignored." He ,contends that the knife display may well have influenced the jury to find the defendant guilty of the burglary charge rather than the lesser included offense of first degree trespass. He further postulates that the four year sentence imposed by the jury not being the minimum for the crime of second degree burglary, appeared to be out of proportion to the crime as nothing was actually taken from the Sparks' home.

■ "Prejudicial error" and "plain error" are not the same. Resort to plain error as a basis for appellate relief places a much greater burden on the defendant. A defendant must not only show that prejudicial error resulted, he must further show that the error so substantially affects his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *State v. Miller*, 604 S.W.2d 702, 705–06 (Mo.App.1980). Even with these guideposts in mind, no rigid formula exists for determining whether plain error occurred. Rather the question must be determined "on a case to case basis and rebalanced each time against the particular facts and circumstances of each case." *Miller, supra* at 706.

■ Defendant's claim on appeal is based both on the state's continued display of the knife and Mr. Burkhead's "threatening demonstration" to the jury. Because the record does not show how the witness demonstrated the incident, we cannot presume that the demonstration was threatening, as the transcript is binding on the reviewing court. *State v. Battle*, 588 S.W.2d 65, 69–70 (Mo.App.1979). Being thus bound by the record, we can only consider the display of the knife to the jury (hereinafter "display") and the state's requesting the defendant to demonstrate how the defendant held the knife, the state's handing the knife to the witness, and the witness' verbal response (hereinafter "demonstration").

■ Defendant contends that the display and demonstration were error because they were not necessary to prove the prosecution's case against the defendant. Defendant is essentially arguing that the display and demonstration were not relevant to the crime charged because burglary in the second degree, § 569.170, does not require that the defendant be armed with a deadly weapon or that violence be used in the commission of the crime. The statutory requirements for burglary in the second degree, § 569.170, are as follows:

A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.

Although the statute clearly does not require that the defendant be armed or use violence, the statute does require that the defendant act unlawfully. The fact that the defendant had a knife in his hand and was holding it out in front of him, pointing it at Mr. Burkhead, tends to prove that the defendant was knowingly acting unlawfully. "Articles showing motive, malice, or intent, or knowledge or preparation, may be received in evidence if shown to be connected with the crime or with the accused." *State v. Johnson*, 539 S.W.2d 493, 516 (Mo.

App.1976). Thus, the display and demonstration were relevant to elements of the crime with which appellant was charged.

■ Defendant argues, however, that the state used the knife solely to portray the defendant as a dangerous and violent person. The law is well settled "that evidence which is competent for one purpose cannot be excluded merely because it is incompetent and prejudicial for another purpose." *State v. Holt,* 592 S.W.2d 759, 775 (Mo.1980) (en banc); *State v. Calmese,* 541 S.W.2d 349, 351 (Mo.App.1976); *State v. Gregory,* 339 Mo. 133, 96 S.W.2d 47, 56 (1936). Defendant's remedy for this brand of prejudicial evidence lies not on appeal but in requesting a limiting instruction from the trial court.

■ Defendant also argues that the display and demonstration of the use of the knife were prejudicial because the knife was not sufficiently identified with the defendant. He contends that the courts have consistently held that the inherently prejudicial effect that lethal weapons may have on a jury rises to the level of reversible error when the weapons are not sufficiently connected with the defendant. *State v. Mayfield,* 506 S.W.2d 363 (Mo.1974); *State v. Wynne,* 353 Mo. 276, 182 S.W.2d 294 (1944); *State v. Fristoe,* 620 S.W.2d 421 (Mo.App.1981). Those cases are distinguishable, however, because in them the weapons had not been identified or connected at all with the defendant or the crime. In the present case, ample evidence connects the knife to the defendant and the crime. The arresting officer testified that he had seized a knife from the defendant and that the Exhibit No. 5 "looked like the one I took from Mr. Hubbard at the scene." Mr. Burkhead testified that the defendant walked out of the Sparks' house and pointed a knife at him. He also said that the Exhibit No. 5 "would have been very similar to the type of knife that was pointed at me at the time."

■ Weapons may be received as proof of a crime if sufficiently connected to the defendant or the crime charged, but the identification of the weapon associated with the case need not be "positive, absolute, certain or wholly unqualified." *State v. Johnson, supra,* 515–17 (Mo.App.1976). *See also State v. Kern,* 447 S.W.2d 571, 574–75 (Mo.1969) (testimony of person who found the knife near the crime scene that it "looks like the weapon I found," was sufficient); *State v. Collins,* 607 S.W.2d 712, 715 (Mo. App.1980) (testimony that knife "looks like or could be the knife" was sufficient); *State v. Martin,* 610 S.W.2d 18, 20–25 (Mo. App.1980) (approved introduction of black and blue steel pistol where robbery victim stated it "looks very much like the gun" defendant had displayed even though victim had reported it to be silver). The knife in this case was sufficiently identified as the one taken from the defendant and the trial court could have admitted it into evidence.

■ Because the knife was sufficiently connected to the defendant and the crime and because the defendant's holding the knife was relevant to an element of the crime charged, the display and demonstration of the knife should not be rejected simply on the ground that they were prejudicial to defendant. Relevant evidence tending to establish any element of the crime is always prejudicial to the defendant. The overwhelming evidence established the defendant's guilt, and if any prejudice did in fact result from the display and demonstration, defendant has clearly failed to meet his burden of showing that it rose to the level of the manifest injustice or miscarriage of justice as is required by the plain error rule. Rule 30.20.

The defendant's second point on appeal concerns a portion of the state's closing argument in which the prosecutor said:

I also think that Lloyd Hubbard is here hoping that you will have leniency on him, but I think that leniency is a mistake in this case and the reason I think it's a mistake is precisely because Lloyd Hubbard went in that house, Lloyd Hubbard pulled a knife on John Burkhead, Lloyd Hubbard is the one who cut that screen open and went through the jewelry box trying to find something to steal.

If you are lenient with Lloyd Hubbard, if all you do is slap him on the wrist, it's not going to deter him or others like him. This argument drew another motion for a mistrial from the defendant which the trial court denied. The defendant now argues that the trial court erred. He contends that the portion of the argument in which the prosecutor remarked, "If you are lenient with Lloyd Hubbard, if all you do is slap his wrist, it's not going to deter him or others like him," was improper and prejudicial because it requested the jury to impose a heavy sentence on the defendant to keep him from committing future crimes.

■ Declaration of a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudicial effect can be removed in no other way. Every instance of improper argument by a prosecutor does not necessarily require the granting of a mistrial. The appellate court will determine whether as a matter of law the trial court abused its discretion in refusing to declare a mistrial. *State v. O'Neal,* 618 S.W.2d 31, 35 (Mo. 1981); *State v. Raspberry,* 452 S.W.2d 169, 173 (Mo.1970); *State v. Garrett,* 622 S.W.2d 387, 390 (Mo.App.1981); and *State v. Lacy,* 548 S.W.2d 251, 252 (Mo.App.1977).

■ A trial court has considerable discretion in permitting or rejecting closing argument by counsel to a jury. Its rulings will be reversed only for abuse of that discretion where the argument is plainly unwarranted and the defendant can establish that the argument had a prejudicial effect upon the jury's determination. *State v. Armbruster,* 641 S.W.2d 763, 766 (Mo. 1982); *State v. Newlon,* 627 S.W.2d 606, 616 (Mo.) (en banc), *cert. denied,* —— U.S. ——, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); *State v. Moore,* 620 S.W.2d 370, 373 (Mo.1981) (en banc).

■ A prosecutor has the duty to insure a fair trial for each defendant. His argument, therefore, must not seek by inflammatory appeals to arouse in the jurors personal hostility toward or personal fear of the defendant. Nor may the prosecutor speculate as to future crimes a defendant might commit. *State v. Raspberry, supra,* at 172–73; *State v. Swenson,* 551 S.W.2d 917, 919 (Mo.App.1977); *State v. Heinrich,* 492 S.W.2d 109, 114 (Mo.App.1973). On the other hand, a prosecutor has wide latitude in argument. *State v. Newlon, supra,* at 616; *State v. Whitlock,* 598 S.W.2d 521, 522 (Mo.App.1980); *State v. Swenson, supra.* He may comment upon the prevalence of crime, the necessity of law enforcement as a deterrent to crime and the evil results which might befall society when a jury fails to perform its duty. He may also argue for severe punishment as a deterrent to the commission of similar crimes. *State v. Laster,* 365 Mo. 1076, 293 S.W.2d 300, 306 (1956) (en banc); *State v. Lane,* 613 S.W.2d 669, 680 (Mo.App.1981); *State v. Swenson, supra,* at 921; *State v. Hill,* 539 S.W.2d 521, 529 (Mo.App.1976); *State v. Heinrich, supra.*

■ The rule on which defendant relies is based on the principle that a prosecutor argues improperly when he argues that because of the defendant's character or criminal proclivity he will be likely to commit future crimes and thus must be prevented from so doing. *See State v. Raspberry, supra,* at 172–73; *State v. Heinrich, supra; State v. Mobley,* 369 S.W.2d 576, 581 (Mo. 1963). The rule on which the state relies is based on the principle that a prosecutor argues properly when he asks for a severe penalty as a deterrent to crime. *See State v. Mobley, supra; State v. Turner,* 320 S.W.2d 579, 583 (Mo.1959); *State v. Laster, supra.* Thus, as was announced in *State v. Swenson, supra* at 921, a prosecutor's argument is proper so long as the thrust of it is that a stiff sentence would deter the defendant as well as others from committing similar crimes. Such an argument does not speculate that the defendant, because of his criminal proclivity and character, will be likely to commit future crimes. Rather, the aim of the argument is to deter members of society, including defendant, from committing future crimes.

■ Upon examining the prosecutor's comments in the context of his argu-

ment, we cannot say that he exceeded the bounds of permissible argument. His argument was a legitimate appeal to the jury to impose the maximum sentence allowed under the statute as a deterrent to crime. As such, his comments did not constitute an inflammatory appeal calculated to arouse the hostility of the jurors toward the defendant. *See State v. Vermillion,* 446 S.W.2d 788, 790 (Mo.1969); *State v. Evans,* 406 S.W.2d 612 (Mo.1966). We thus find no abuse of discretion by the trial court herein in refusing to grant the drastic remedy of a mistrial.

Defendant's final point on appeal is that the trial court erred in requiring him to expose his tattooed arms during the trial because such display had no probative value, was immaterial and prejudicial "as the witness had not been specific about the tattoos and had already clearly identified the defendant twice." The state's witness, John Burkhead, testified that the man he encountered leaving the Sparks' house "had tatoos [*sic*] on one arm or both arms—I don't remember for sure." Thereafter, the trial court, over defendant's objection, directed the defendant to bare his arms to expose his tattoos for Burkhead's examination. The witness recognized that at trial the defendant had tattoos on his arms and that his beard was then "a lot more fuller" than it was on July 14, 1980. Mr. Burkhead acknowledged that the display of the tattoos provided him no aid in identifying the defendant.

Defendant's objection that the tattoos on his arms were irrelevant, immaterial and prejudicial was incorrect. Evidence of defendant's tattoos was relevant as corroboration of Mr. Burkhead's identification of defendant's other physical features. In an eye-witness identification case, the court should always be hesitant to exclude any evidence which tends to aid and support identification. Here at worst, the evidence was cumulative, but it was not prejudicial, particularly since Mr. Burkhead could not recognize the specific tattoos. Moreover, the procedure used at trial to identify a defendant lies within prudent judicial discretion. *State v. Owens,* 620 S.W.2d 448, 450–51 (Mo.App.1981).

For the foregoing reasons, we affirm defendant's conviction for burglary in the second degree.

All concur.