**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Charles M. LOEWE,
Defendant–Appellant.**

**No. 53258.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 21, 1988.

Rehearing Denied Aug. 3, 1988.

Robert H. Rice, Belleville, Ill., for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Jefferson City, for plaintiff-respondent.

STEPHAN, Presiding Judge.

This is an appeal from defendant's conviction on two counts of assault in the first degree for which he was sentenced to twenty-five years on each count. The sentences are to run consecutively to each other and to a thirty-six year sentence de-

fendant received in federal court on racketeering charges.

Defendant was originally charged by indictment with co-defendants Paul Leisure, Anthony Leisure, David Leisure, Ronald "Joe" Broderick, John Ramo and Fred Prater on November 10, 1983. They were charged with two counts of capital murder (for the murders of James Anthony Michaels, Sr. and George "Sonny" Faheen), two counts of first degree assault (for the shooting of Charles John Michaels and Dennis Day) and two counts of armed criminal action. In May 1985 the state filed a new indictment, dropping the two counts of armed criminal action. Finally, on December 17, 1986, the charges against defendant were severed. This appeal, therefore, addresses only the assault convictions.

The sufficiency of the evidence to sustain defendant's conviction is not in dispute. We, therefore, present only the most important facts in a light most favorable to the verdict.

Anthony, Paul and David Leisure and Fred Prater were partners in a business called LN & P Towing. Defendant and John Ramo worked for LN & P Towing as truck dispatchers, and Joe Broderick was associated with the group.

On August 11, 1981, Paul Leisure was seriously injured when his car exploded on Nottingham and Kingshighway in the City of St. Louis. While he was still recuperating in the hospital, the Leisures, defendant, John Ramo, Joe Broderick and Fred Prater attempted to identify who might have been responsible for the bombing. One group under suspicion, and ultimately held to be responsible, was the Michaels family. They were suspected because Paul Leisure had been responsible for the bombing death of James Anthony Michaels, Sr., the year before.

In order to avenge Paul Leisure's injury, defendant and David Leisure began watching the movements of Charles John Michaels. They determined that Michaels worked at Anheuser–Busch and that he ate lunch at The Edge restaurant on a regular basis. It was decided that the restaurant would be the best place to ambush Mi-chaels because there was an abandoned building next to the parking lot that they could use.

On September 11, 1981, defendant, Anthony Leisure, David Leisure and Joe Broderick met at defendant's home. Defendant drove the Leisures to The Edge in a stolen white van. Broderick followed in a white Chevrolet and waited near a large wall on nearby Hickory Street. The group had previously chosen the area as the place to switch vehicles after the shooting.

At approximately 11:00 a.m. Michaels and Dennis Day arrived at the restaurant. As they exited their car the shooting began. Both Michaels and Day were hit by gunfire. Two restaurant employees saw the van parked in the alley entrance. They also saw a heavyset person with a moustache in the driver's seat, but neither was able to positively identify defendant.

Later, Anthony Leisure told Fred Prater that he might be identified because the bus boys had seen him in the alley. Prater told defendant about this comment and defendant responded, "What are they worried about," because "They had me sitting there with no mask at all, driving that van."

Defendant was arrested on November 8, 1983. He was brought to trial on April 28, 1987 for the assaults on Michaels and Day. After hearing all the evidence, the jury found defendant guilty on both charges.

Defendant raises three points on appeal. The first is that the trial court erred in not dismissing the charges because defendant's right to a speedy trial under both the Missouri statute, § 545.780, RSMo 1978 (which was in effect at the time of his arraignment in November, 1983), and the federal constitution was violated. Secondly, the conviction should be reversed because the prosecutor denied defendant his right to be tried only for the offense for which he was indicted by: (1) bringing out evidence of other crimes; (2) introducing evidence about Paul Leisure's activities; (3) using defendant's federal convictions as substantive evidence to attack defendant's character when defendant's character was not at issue; and (4) by improperly creating the

inference that defendant's attorney was attempting to deceive the jury. Lastly, defendant asserts that the trial judge abused his discretion in sentencing defendant to consecutive terms, after the judge participated in plea discussions.

# I

■ Defendant's first point asserts that the trial court should have dismissed the charges because he was denied his right to a speedy trial. Defendant did not preserve this point by raising it in his motion for new trial. In order to appeal constitutional questions, the grounds must be asserted at the first opportunity and must be preserved in the motion for new trial. *State v. Wright*, 551 S.W.2d 884, 886 (Mo.App. 1977). This court does, however, have discretion to review the point for plain error. Sup.Ct.Rule 30.20.

■ Plain error is invoked sparingly and is applied in those cases only "where there is a stong, clear showing of manifest injustice or a miscarriage of justice." *State v. Hubbard*, 659 S.W.2d 551, 555–556 (Mo.App.1983). Whether or not plain error is present is determined by the facts of the individual case. *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983). It is the defendant's burden to prove the alleged error constitutes manifest injustice. *Hubbard*, 659 S.W.2d at 556. If guilt is established by overwhelming evidence, then there is no injustice in refusing to invoke the rule. *State v. McKinley*, 689 S.W.2d 628, 632 (Mo.App.1984); *Hubbard*, 659 S.W.2d at 556.

We review the point *ex gratia;* but, in order to do so, it is necessary to present the procedural history of this case.

Defendant was arrested November 8, 1983 and was arraigned on November 18, 1983. The case was continued by the state for "want of time to try" on December 15, 1983, January 26, 1984 and February 23, 1984. On April 24, 1984 the state filed notice of its intent to use intercepted wire and oral communications at trial. Defendant had moved to suppress this evidence in federal court, so the case was continued until such time as there was a ruling on the admissibility of the evidence in federal court.

Defendant moved to dismiss the indictment on May 30, 1984 alleging: that more than 180 days had passed since the arraignment, defendant had been in continuous custody, and all delays had been occasioned by the state. This motion was denied on June 28, 1984. On August 28, 1984, the United States Magistrate filed his Report and Recommendation regarding the federal motion to suppress. He determined that the evidence was admissible. Defendant requested a speedy trial on September 24, 1984 and filed a second motion to dismiss which was denied.

The state continued the trial on January 29, 1985 because the defendant was then on trial in federal court. In May 1985 the state filed a new indictment. Defendant was arraigned under the new indictment on June 12, 1985.

On July 2, 1985, the Circuit Attorney's office filed a memorandum of *nolle prosequi* because a superseding indictment had been filed. Defendant filed his third motion to dismiss the indictment and another request for a speedy trial. The trial judge, before whom the case was then pending, denied these motions on July 30, 1986, stating in his order, "court is mindful of the complexity of this case, the multiple parties, issues and evidence, and the dual prosecution of defendant in Federal and State jurisdictions. Court finds trial delays not to be excessive under all circumstances nor occasioned by the State."

On August 11, 1986 defendant adopted all motions filed by all co-defendants, except for those requesting a continuance. Defendant moved for and obtained a change of judge on April 27, 1987. Trial commenced on April 28, 1987.

Defendant suggests that the former Speedy Trial Act, § 545.780, RSMo 1978 (Repealed June 7, 1984), should apply because it was in effect at the time defendant was arraigned. The state argues that the statute is procedural, therefore, the one in effect at the time of defendant's trial, § 545.780, RSMo 1986, should apply.

■ The Speedy Trial Act is a procedural law. *State v. Maynard,* 714 S.W.2d 552, 554 (Mo.App.1986); *State v. Diener,* 706 S.W.2d 582, 584 (Mo.App.1986). It is, therefore, subject to repeal or revision without any ex post facto consequences. *Maynard,* 714 S.W.2d at 554.

The statute which we apply, § 545.780, RSMo 1986, reads as follows:

1. If defendant announces that he is ready for trial and files a request for a speedy trial, then the court shall set the case for trial as soon as reasonably possible thereafter.

2. The provisions of this section shall be enforceable by mandamus. Neither the failure to comply with this section nor the state's failure to prosecute shall be grounds for the dismissal of the indictment or information unless the court also finds that the defendant has been denied his constitutional right to a speedy trial.

This section specifically incorporates defendant's constitutional right to a speedy trial in its application by providing that noncompliance is not grounds for dismissal unless the court determines that the defendant was also denied his constitutional right. § 545.780.2 RSMo 1986.

■ The right to a speedy trial guarantees to a criminal defendant that the state will move fast enough to assure the defendant of the early and proper disposition of the charges against him. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468, 474 (1971). What is essential is orderly expedition and not mere speed. *Id.* This is because the Sixth Amendment right to a speedy trial does not only protect the defendant, it also protects society by keeping defendants from using long pre-trial delays to their own advantage. Deprivation of the right to a speedy trial will not, therefore, prejudice the defendant per se. *Barker v. Wingo,* 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101, 112 (1972).

There is no precise time from which we can determine when a delay is prejudicial and constitutes a denial of the right. *State v. White,* 706 S.W.2d 498, 501 (Mo.App. 1986). Therefore, Missouri has adopted the balancing test outlined in *Barker,* 407 U.S. at 530–532, 92 S.Ct. at 2192–2193, 33 L.Ed. 2d at 116–118. See, *State v. White,* 689 S.W.2d 699, 702 (Mo.App.1985). Thus, the factors we balance are length of delay, reason for the delay, defendant's assertion of his right, and prejudice to the defendant. *Id.*

### (A) *Length of Pre-trial Delay*

■ Since there is no exact formula which determines when a pre-trial delay is presumptively prejudicial, each case must be examined on its own facts. As was noted in *Barker:*

The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

*Barker,* 407 U.S. at 530–531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

The protection of the Sixth Amendment attaches when the defendant becomes an "accused", i.e. at the time an indictment or information is filed. Here, defendant became an "accused" at least on November 18, 1983 when he was first arraigned on the charges. *State v. Granger,* 680 S.W.2d 258, 261 (Mo.App.1984). The length of delay was, therefore, approximately 3 and one-half years. For our purposes we can deem this delay presumptively prejudicial. See *United States v. Washington,* 504 F.2d 346, 348 (8th Cir.1974) (14 month delay served as the triggering mechanism).

### (B) *Reasons For The Delay*

As the reviewing court we must look at the reasons given by the state for the delay and then determine whether the trial court could have reasonably decided the delay was or was not justified. *State v. Knox,* 697 S.W.2d 261, 263–264 (Mo.App.1985).

Different weight is given to different justifications:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

■ Here, the state's continuances were for the purpose of expeditiously bringing the case to trial. The state's motions to continue, based on defendant's pretrial motions and defendant's trial in federal court, were valid and should not be weighed heavily against the state. Moreover, there is no indication from the record that the dismissal of the indictment and the *nolle prosequi* memorandum were deliberate attempts by the state to gain an advantage over the defendant. *Granger*, 680 S.W.2d at 261–262.

We should mention here that defendant accuses the prosecutor of delaying the trial in order to induce defendant to testify against his co-defendants. Defendant bases this on statements made at the sentencing portion of his trial. We do not agree.

The state's desire to make a submissible case against all the co-defendants was strong, however, the delays here were caused more by extenuating circumstances (i.e. the federal trial) than by any deliberate attempt of the prosecutor to force defendant to testify against his co-defendants. The record only indicates that the prosecutor was willing to bargain with defendant in return for his testimony. We find this assertion to be without merit.

#### (C) *Defendant's Assertion Of His Right*

■ Defendant filed three motions to dismiss the indictment and two requests for a speedy trial. Each was denied by the trial judge. Dismissal of the indictment is a matter for the discretion of the trial judge, and we will only overturn for abuse of discretion. *State v. Collins*, 669 S.W.2d 933, 935 (Mo. banc 1984). In July of 1986, the trial judge before whom the case was then pending entered an order denying defendant's motion to dismiss the indictment based on the state's failure to accord him a speedy trial. In the order, the trial court specifically held that the trial delays were not excessive, given the complexity of the case, the fact of multiple defendants, the issues and evidence, and the simultaneous state and federal prosecutions. We agree.

Defendant was originally charged with two counts of murder and two counts of assault. The charges were not severed until November 11, 1986. There were at least four co-defendants, and all of them were facing both federal and state charges. While the state did move cautiously, there was ample reason for such caution.

We, therefore, hold that despite the fact that defendant asserted his rights in a timely fashion, the trial court did not abuse its discretion in not dismissing the indictment.

#### (D) *Prejudice To The Defendant*

■ Any prejudice complained of must be actual, apparent on the record or by reasonable inference "not speculative or possible prejudice." *State v. Buckles*, 636 S.W.2d 914, 920 (Mo. banc 1982). In determining if defendant has suffered from prejudice, we consider the oppressiveness of pre-trial incarceration, whether it unduly heightened defendant's anxiety, and possible impairment of the defense. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

■ We note that, although defendant was in custody the entire 3 and one-half years, he was also convicted on federal racketeering charges in 1985. We cannot, therefore, hold the state responsible for that period of incarceration. The rest of the delays can be attributed to the pre-trial motions defendant joined in with his co-defendants.

The only specific instance of prejudice was the apparent loss of a defense witness. Defendant testified that a neighbor, Ray Schindler, was with him at defendant's home at the time of the assaults. Defendant testified that he had "heard" that Mr. Schindler had died prior to the trial, but gave no indication as to when the death occurred. Even if Mr. Schindler had testified, such evidence would have been largely cumulative in light of the testimony of defendant's wife and that of another neighbor, Concepcion Reyes. Defendant's wife testified that at the time of the assaults, she was working days and defendant was working nights and that defendant spent all days tending to his mother who lived with them and was extremely ill and in need of constant attention. Reyes, who lived next door, also testified that defendant steadfastly refused to leave his mother by herself.[1]

To hold that, if defendant had been tried more promptly, Mr. Schindler "might" have been available to provide defendant with an alibi which the jury "might" have believed would amount to finding prejudice to defendant purely on the basis of speculation and possibility and violate the criteria set forth in *State v. Buckles,* supra. Moreover, Schindler's unavailability was largely offset by the testimony of defendant's wife and his neighbor Reyes as outlined above.

Having balanced the four factors, we conclude that defendant's constitutional right to a speedy trial was not violated. Based on this conclusion we hold that the trial court did not err in failing to dismiss the indictment.

## II

 Defendant's second point is that the convictions should be reversed because the prosecutor denied defendant his right to be tried only for the offense for which he was indicted. Defendant states that the prosecutor was guilty of the following: bringing out evidence of other crimes; introducing evidence regarding Paul Leisure's other activities, the only purpose of which was to convince the jury of defendant's guilt because of his association with Paul Leisure; using defendant's RICO and RICO conspiracy convictions as substantive evidence to attack defendant's character when character was not in issue; and, improperly creating the inference that defendant's attorney was attempting to deceive the jury and was acting in bad faith when he questioned a state's witness about memory problems.

This point preserves nothing for our review because it fails to state wherein the trial court erred. *State v. Hughes,* 748 S.W.2d 733, 737 (Mo.App.1988). Rule 30.-06(d) states that "Setting out abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule." Defendant has not set forth any action or ruling of the trial court.

Although the point was not preserved, we have reviewed the allegations and all cases cited for plain error. After examination of the record we can find no indication of manifest injustice. Point II is denied.

## III

In his final point, defendant claims that the trial judge abused his discretion in imposing consecutive sentences because the judge was prejudiced against the defendant. The judge, it is claimed, led plea discussions on behalf of the state. Defendant further claims that when he refused to testify against his co-defendants, the judge sided with the state and acceded to the prosecutor's sentencing request when he should have exercised his own independent

---

1. Prior to jury selection, defendant's attorney renewed his motion to dismiss for want of a speedy trial and argued that the delay had precluded him from calling Mr. Schindler as a witness because Mr. Schindler had "died within the past month." Defense counsel also stated, however, that Mr. Schindler would "testify not to any specific day that this event happened in the amended information, but that *generally* Charles Loewe was home every day because he had a very ill mother." (Emphasis added.) Taking counsel's representations at face value, Schindler's testimony would have been directly cumulative of that of defendant's wife and Mr. Reyes.

judgment. We find no merit in this contention.

Defendant's claim is based on the following statements made by the Court.

### A.

I took conversations we had prior to the trial to mean that this situation where the State would have liked to have him as a witness against the Leisures was broached several times before his case ever got to me. Is not that correct?

### B.

Now, of course, if he would have shown some interest in helping the State, then that perhaps is an exception to the rule that you don't deviate from what the twelve citizens of the community· set as an assessment of punishment for a crime. That would have been an alternative without a plea, and would still have let you—

But that would have had to have been an agreement between you and Mr. Rogers, or you and the State, and me. I'm not telling you absolutely I would have done it. It would have had to have been discussed thoroughly.

■ Generally, we will not review the discretion of the trial court in fixing sentences unless an abuse of discretion is shown by motive of partiality, prejudice or oppression, or is induced by corruption. *State v. Burton*, 355 Mo. 792, 198 S.W.2d 19, 22 (1946). We do not find the prejudice of which defendant speaks. The statements clearly show that plea negotiations began prior to trial and the judge before whom the case was tried was not assigned to it until the day before the trial began. Defendant took the court's statements out of context. After reviewing the entire transcript, we find that the judge was speaking of mitigating circumstances that might have been taken into consideration.

■ Defendant also contends that the trial judge did not exercise independent discretion in ordering consecutive sentences. It is within the discretion of the trial judge to determine if sentences should run concurrently or consecutively. *State v. Tilley*, 569 S.W.2d 346, 350 (Mo.App.1978). The trial judge made it quite clear that his sentencing was based on the brutality of the crimes and the fact that defendant was a willing participant. Moreover, defendant's sentence falls well within statutory limits; and, since he failed to show prejudice, his claim that the sentence is excessive is not cognizable. *Burton*, 198 S.W.2d at 23; *Hill v. State*, 543 S.W.2d 809 (Mo. App.1976); *State v. McRae*, 528 S.W.2d 794 (Mo.App.1975). We, therefore, hold that the trial court did not abuse its discretion in sentencing defendant to consecutive terms.

The judgment of the trial court is affirmed.

SATZ, C.J., and PUDLOWSKI, J., concur.