STATE of Missouri, Respondent,

v.

Ricky SMITH, Appellant.

Ricky SMITH, Appellant,

v.

STATE of Missouri, Respondent.

No. 58658.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 16, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 17, 1993.

Application to Transfer Denied
April 20, 1993.

Raymond L. Legg, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Ricky Smith, appeals a bench tried conviction for failure to appear, RSMo § 544.665.1 (1986). We affirm.

On April 2, 1987, appellant was tried by a jury in the Circuit Court of Jefferson County for assault in the first degree and armed criminal action. Appellant was convicted on both counts. The court ordered a pre-sentence investigation, set bond for appellant, and scheduled formal sentencing for May 19, 1987. Shortly thereafter, appellant was released on bond.

On April 24, 1987, appellant filed a Motion for New Trial or Reduction of Sentence or Judgment of Acquittal. On May 5th, attorney for appellant filed a notice to call up the April 24th motion for hearing on June 11, 1987. The Certificate of Service contained with the notice stated:

> A copy of this notice was mailed to the office of the prosecuting attorney for Jefferson County and to defendant at his last known address, 715 South First Street, Pacific, Missouri, this 4th day of May, 1987.

On June 11, 1987, appellant's sentencing and hearing on his motions were called. Although counsel for both parties was present, appellant failed to appear. The court issued a capias warrant and set bond at $500,000.00.

Appellant was arrested in Peoria, Illinois on August 23, 1988, some 439 days later, on the capias warrant. He was extradited back to Missouri and sentenced for the assault and armed criminal action convictions approximately a month later.[1]

Following a bench trial on the failure to appear charge, appellant was found guilty on May 16, 1990, and sentenced to four years to be served consecutively with the sentences for assault and armed criminal action.

On October 12, 1990, appellant filed a pro se Rule 29.15 motion for post-conviction relief. A second pro se motion was filed in early November. Counsel was appointed and said counsel filed an amended Rule 29.15 motion on January 11, 1991, alleging ineffective assistance of counsel and denial of due process. An evidentiary hearing was held on November 26, 1991. On January 23, 1992, Findings of Fact and Conclusions of Law were issued by the motion court denying appellant's motion for post-conviction relief. This consolidated appeal followed.

Appellant raises six points in his appeal. We will address them in the order raised.

First, appellant claims trial court error for overruling appellant's motions for judgment of acquittal at the close of the State's evidence and at the close of all evidence. Appellant asserts his right to due process was violated in that there was insufficient evidence to establish he had received notice that his sentencing date was changed. Additionally, appellant argues the evidence was inadequate to show his failure to appear on June 11th was willful.[2]

It is a well-accepted principle that, upon review, the judgment rendered in a court-tried case will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Trenton Trust Co. v. Western Sur. Co., 599 S.W.2d 481, 483 (Mo. banc 1980). Therefore, we will consider only the facts and inferences favorable to the prevailing party. St. Charles County v. McPeak, 730 S.W.2d 611, 612 (Mo.App., E.D.1987). In so doing, we find no error on this point.

As pointed out in the recitation of facts, the Certificate of Service clearly stated that a copy of the notice requesting a hearing on appellant's motion, and thus changing the date of sentencing, was sent to appellant's last known address. "In the absence of evidence to the contrary there is a rebuttable presumption that a written certificate by counsel making service that papers have been mailed to named parties at an address certain speaks the truth, i.e., that the papers were mailed to the parties named, at the address given, and that the attorney entertained the belief in good faith that the address was in fact the proper address of the parties named." Zurheide–Hermann, Inc. v. London Square Dev. Corp., 504 S.W.2d 161, 165 (Mo.1973). Therefore, relying on the Certificate of Service, a rebuttable presumption of receipt of said notice was created.

Except for his testimony to the contrary, appellant provided no evidence to rebut this presumption. Because of this lack of proof, appellant's receipt of the notice is assumed.[3]

1. Appellant was sentenced to consecutive terms of ten years and five years on these convictions.

2. The applicable statute, RSMo § 544.665 (1986), states:
 1. In addition to the forfeiture of any security which was given or pledged for his release, any person who, having been released pursuant to sections 544.040 to 544.665, or upon a recognizance or bond pursuant to any other provisions of law, willfully fails to appear before any court or judicial officer as required shall be guilty of an offense and punished ...

3. Even if appellant had attempted to offer some proof that the notice was not received, this would simply have created an issue for the trier of fact. Jetz Service Co., Inc. v. Chamberlain, 812 S.W.2d 946, 950 (Mo.App., W.D.1991).

Appellant also argues there was a lack of sufficient evidence to indicate that his failure to appear on June 11th was willful. Willfulness need not be proved by direct evidence, but is generally shown through circumstantial evidence. *State v. Street*, 735 S.W.2d 371, 372 (Mo.App., W.D. 1987). Here, we find both direct *and* circumstantial evidence of appellant's intent to be absent from court on June 11, 1987. At the sentencing hearing for the assault and armed criminal action convictions, appellant indicated that his absence on June 11, 1987, was intentional. In response to questioning, appellant stated: "I have come to this courtroom every time I was supposed to except for the date I was supposed to be sentenced...." This statement is direct proof that appellant knowingly avoided the sentencing hearing. Additionally, the fact that appellant's whereabouts only came to light some 439 days after the sentencing date when appellant was arrested by authorities in another state provides fairly strong circumstantial evidence of appellant's intent to avoid sentencing. Point denied.

For his second point, appellant alleges error in the overruling of his motion to dismiss. Appellant contends that more than 180 days elapsed between his request for prompt disposition of the charge and the trial itself. Therefore, asserts appellant, dismissal was required under the Uniform Mandatory Disposition of Detainers Act (hereinafter "UMDDA"). RSMo §§ 217.450–217.485.

However, in order for appellant to obtain the protection of the UMDDA, a detainer must have been filed against him. *See* RSMo § 217.450, *Hicks v. State*, 719 S.W.2d 86, 90 (Mo.App., S.D.1986); *State v. Howell*, 818 S.W.2d 681, 682–3 n. 1 (Mo. App., W.D.1991). Appellant acknowledges in his brief that at his hearing on the failure to appear charge, both parties stipulated to the fact that *no* detainer had been filed in this matter. As such, the UMDDA does not apply and this point is denied.

Appellant next suggests the trial court erred in overruling his motion to dismiss as this denied him his right to a speedy trial and due process. Appellant argues that the nineteen-month delay between his arrest and trial was prejudicial, causing him mental hardship as well as the loss of a defense witness.

A criminal defendant's right to a speedy trial guarantees that the State will move quickly to assure the defendant of early and proper disposition of the crimes with which he is charged. *State v. Loewe*, 756 S.W.2d 177, 181 (Mo.App., E.D.1988). Missouri utilizes a balancing test to determine the extent of the prejudice, if any, that the delay caused. *State v. Raine*, 829 S.W.2d 506, 512 (Mo.App., W.D.1992). There are four factors to this test which must be considered on a case-by-case basis: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of the right; and 4) the prejudice to the defendant. *Id.* Applying these factors to the facts before us, we find no prejudicial delay.

Regarding the first factor of the balancing test, the length of delay, we should first note "the length of delay is measured from the time defendant becomes an 'accused,' either by indictment or when he is actually restrained by arrest and charged." *State v. White*, 689 S.W.2d 699, 702 (Mo.App., E.D.1985). Appellant contends his arrest in Illinois in August of 1988 triggered the running of time on his speedy trial claim. However, as respondent points out, that arrest had nothing to do with the subsequent failure to appear charge and conviction from which this appeal is taken. Rather the August, 1988, arrest charged appellant as a fugitive from justice on his assaults and armed criminal action convictions.

The formal information charging appellant with failure to appear was not filed until June 27, 1989. As the trial on such charge was held on March 16, 1990, there was only a period of eight and one-half months between the information and trial, not the nineteen-month delay espoused by appellant.

Although we find the actual delay in the process here to be much shorter than

that asserted by appellant, it is generally accepted that any delay greater than eight months is presumptively prejudicial. Thus, we are required to consider the remaining three factors in the balancing test. *See, State v. Robinson,* 696 S.W.2d 826, 831–32 (Mo.App., W.D.1985).

The next point under the balancing test calls for consideration of the reason for the delay. Although docket entries indicate the trial was originally set for November 27, 1989, for some unexplained reason it was later reset for March 16, 1990. Respondent admits that though neither party was able to point to specific actions of the other which caused the delay here, as the ultimate duty to bring an accused to trial rests on the State, *State v. Bohannon,* 793 S.W.2d 497, 504 (Mo.App., S.D.1990), this point must weigh slightly against respondent.

The third factor to consider here involves a defendant's assertion of his right to a speedy trial. Appellant recites a long chronology of events attempting to display each as an assertion of his right to a speedy trial. These events include an oral request by appellant for a quick disposition of charges pending; letters to the circuit court, his former public defender, and his appellate attorney regarding a speedy trial; a *pro se* motion to dismiss filed in November, 1989; a *pro se* motion for speedy trial filed December 22, 1989; and finally, a motion to dismiss submitted by appointed counsel at the time of trial. Appellant asserts he did everything he could reasonably have been expected to do under the circumstances to obtain his right to a speedy trial.

▮▮ However, it seems fairly clear from case law that only a formal request for a speedy trial will work to assert such right. *See, State v. Reynolds,* 813 S.W.2d 324, 326 (Mo.App., E.D.1991) (as legal record failed to reflect the filing of a motion by defendant asserting his right to speedy trial, this factor weighed against defendant); *State v. Joos,* 735 S.W.2d 776, 783 (Mo.App., S.D.1987) (motion for speedy trial not filed until day of trial, thus weighing against defendant); *State v. White,* 689 S.W.2d 699, 703 (Mo.App., E.D.1985) (motion to dismiss filed more than nine months after arrest and complaint weighed against defendant); *State v. Bohannon,* 793 S.W.2d 497, 504 (Mo.App., S.D.1990) (appellant's request for speedy trial filed five months after service of arrest warrant attenuated the State's delay in bringing appellant to trial); *State v. Loewe,* 756 S.W.2d 177, 182 (Mo.App., E.D.1988) (defendant filed three motions to dismiss and two requests for speedy trial, each denied as the complexity of the case justified the delays). As appellant's first formal assertion of his right to a speedy trial did not appear until November, 1989, in the form of a motion to dismiss, there was actually only a four month delay between this first formal request and the trial.

Appellant relies heavily on the Western District case of *State v. Holmes,* 643 S.W.2d 282 (Mo.App., W.D.1982) in support of his proposition that he did all "he could reasonably be expected to do . . . to assert his right to a speedy trial." *Id.* at 288. In *Holmes,* the defendant, apprehended in St. Louis, was wanted for a manslaughter offense in Jackson County, Missouri, and a robbery offense in Clay County, Missouri. The defendant was tried and convicted in Jackson County for manslaughter, sent to the State penitentiary, moved several times to successively less restrictive types of confinement, and finally transferred to a prerelease center. At no time during this year of incarceration was any record, detainer, or arrest warrant ever revealed regarding the Clay County charge. The defendant was finally arraigned on the Clay County charge on July 16, 1981. Counsel entered his appearance for defendant on August 11, 1981. On August 26, 1981, the defendant filed a formal motion to dismiss. The defendant in *Holmes* was finally brought to trial on the robbery charge some twenty-two months after the initial arrest in St. Louis, Missouri. In its holding, the Western District found that the defendant had been prejudiced by the undue delay between his arrest and the trial on the robbery charge.

*Holmes* can be readily distinguished from the present case. First, at the time of his arrest in St. Louis, the defendant in *Holmes* was wanted on two separate charges which were pending in two separate counties at the time of the arrest. Here, when appellant was apprehended in Illinois, he was wanted only on the fugitive from justice charge pending at that time. The information charging failure to appear was not filed until some months after the arrest. Second, the defendant in *Holmes* took formal action on his denial of a speedy trial claim within 41 days of his arraignment on the robbery charge, and within a mere 15 days of the entry of appearance of his counsel. Here, although appellant apparently made oral requests and wrote letters to obtain information on pending charges, he failed to take any formal action for *133* days after the information was filed charging him with failure to appear. As stated earlier, it is only some formal action fashioned as a motion which will constitute an assertion of one's right to a speedy trial. Because appellant waited nearly four and one-half months to assert his right, we find this case sufficiently distinguishable from *Holmes* and weigh this point against appellant.

 The last factor to be considered in this balancing test requires inquiry into the extent of prejudice, if any, the appellant suffered as a result of the delay. The most important consideration here is whether the delay impaired appellant's ability to make a defense. *State v. Robinson*, 696 S.W.2d 826, 832 (Mo.App., W.D.1985). To require reversal on this point, the prejudice claimed must be actual prejudice—not speculative or potential prejudice—and must be obvious from the record or by reasonable inference. *Id.* Appellant claims the delay in bringing him to trial on the failure to appear charge caused him mental distress and loss of contact with a

defense witness, Debra Burnett–Sturgess. As to the mental distress claim, appellant provided no substantiation for this assertion. We find a lack of credibility regarding this point. As to the loss of a witness, we note that Mrs. Sturgess lived with appellant during May and June of 1987, when appellant failed to appear for sentencing on the assault and armed criminal action convictions.[4] Appellant asserts Mrs. Sturgess would have testified appellant never received notice in 1987 that his sentencing hearing had been changed from May to June.[5] As Mrs. Sturgess' testimony would have provided no new evidence in the case and would have served merely to corroborate the testimony of appellant, we find no prejudice in this regard. Additionally, we find the facts and inferences to weigh heavily against appellant's alleged uninformed absence from the court on June 11, 1987. At the sentencing hearing on the assault and armed criminal action conviction which ultimately took place on September 8, 1988, the following dialogue was had:

"Question: Thereafter, this Court on your motion reduced your bond, you made bond and absconded and left your bondsman stuck with forty-five thousand; is that your recollection?"

"Answer: Yes, sir."

"Question: Where did you go?"

"Answer: I, um, left. I tried to make some money so I could obtain private— my own private attorney. I didn't feel I was represented right by the Public Defender."

\* \* \* \* \* \*

"Answer: I have come to this courtroom every time I was supposed to except for the date I was supposed to be sentenced.... I did leave. I was trying to get another attorney. I didn't feel I had been represented in this case."

4. Mrs. Sturgess was unmarried in 1987 and was known as Debra Burnett.

5. Mrs. Sturgess' whereabouts were discovered by the family of appellant near the time of appellant's Rule 29.15 hearing. Mrs. Sturgess testified at that hearing that she did not recall

receiving notice of the change in the date for appellant's sentencing hearing in the spring of 1987. She also indicated that she had not known of the rescheduled hearing herself and that appellant had never mentioned such a change to her.

One can readily assume from this exchange that appellant knew of, and intentionally avoided, his sentencing hearing. In addition, during the fourteen months between the scheduled hearing and appellant's eventual arrest on the capias warrant, appellant never once attempted to contact his attorney or the court to ascertain the status of his convictions or sentence. Also, appellant was found living out of State. All of these facts combine to leave us with a firm impression that appellant was not prejudiced by the short delay in bringing him to trial, and we weigh this fourth factor against appellant.

As we find two of the four points in this balancing test to weigh more heavily against appellant, we hold that there was no prejudice to appellant by the delay in bringing him to trial. Point denied.

The fourth point raised by appellant suggests the denial of his Rule 29.15 motion was in error. Appellant argues ineffective assistance of counsel in that his appointed counsel failed to file a request for final disposition of the charge pursuant to the UMDDA.

■ We first note that our review is limited to a determination as to whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989). Clear error will be found only where a review of the entire record leaves this court with the firm impression that a mistake has been made. *Id.* at 695–96. Moreover, to establish a claim of ineffective assistance of counsel, a defendant must show: 1) that his attorney was remiss in exercising the customary skill and diligence of a reasonably competent attorney under similar circumstances, and 2) that defendant was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). This is a difficult burden to carry as the allegation must be proven by a preponderance of the evidence as well as the fact that counsel is presumed competent. *Id.*

■ Trial counsel was appointed on March 1, 1987, to represent appellant on his failure to appear charge. Appellant contends that despite counsel's knowledge of appellant's repeated attempts to obtain prompt disposition of the charges against appellant, counsel himself failed to take any steps in this regard until the day of trial. Appellant argues that if counsel, at the time of his appointment, had sought, or had advised appellant to seek, a prompt disposition of the charge under the UMDDA, the trial on such charge would have been required to be held within 180 days of the request. Therefore, suggests appellant, the trial court would have lost jurisdiction to try this matter by the time the trial was had in March of 1990. As such, appellant claims he was prejudiced by his counsel's failure to act in a timely manner.

■ We again note that no detainer was filed in this matter. Therefore, the protection of the UMDDA was unavailable for appellant. However, even if appellant could have utilized the 180–day speedy trial provision of the UMDDA, we find that no prejudice resulted from counsel's actions. Prejudice must be affirmatively proved; it will not be presumed from a showing that counsel was deficient in his performance. *State v. Stepter*, 794 S.W.2d 649, 656 (Mo. banc 1990). With this in mind, we find that it is impossible for appellant to prove prejudice simply because no request for a speedy disposition of charges was filed at the time counsel was appointed. As it was, appellant was brought to trial on his failure to appear charge within four months of his motion to dismiss and within three months of his motion for a speedy disposition of charges. It can be assumed that if a motion had been filed earlier than November or December, appellant would have been brought to trial before March in order to fall within the 180 day period of limitations. Point denied.

For his next point of error, appellant asserts his Rule 29.15 motion should not have been denied because appellant was denied his privilege against self-incrimination, his right to effective counsel, and due process of law. Appellant bases this assertion of error on the fact he was not told that statements he made at the sentencing proceeding for the assault and armed criminal action convictions could be used against

him during the prosecution on the failure to appear charge. Appellant also relies on the fact that his trial counsel failed to object to the admission of these statements at the failure to appear trial.

■ At the sentencing hearing on the assault and armed criminal convictions, the trial judge asked appellant why he had failed to appear at the original sentencing proceeding. Appellant responded indicating he had wanted time to earn some money to hire a private attorney as he had been unhappy with the public defender who had represented him at trial. This statement was then used against appellant at the proceedings on the failure to appear charge to establish the willfulness of his absence from the original sentencing hearing. Appellant now argues that he should have been advised of his *Miranda*[6] rights by either the judge or appellant's attorney before the sentencing hearing, as both were aware a trial would be had in the future for appellant's failure to appear. Appellant cites no case law whereby *Miranda* warnings were required to be provided a defendant during such a hearing as the one here, and our research reveals none as well. We refuse to accept appellant's invitation to read the protections of *Miranda* so broadly, and find no error or prejudice on the part of counsel or the court in this regard.

■ Appellant next claims ineffective assistance of counsel in that his appointed attorney did not object to the admission of this statement at the proceedings on the failure to appear charge. We reiterate that to prove such a claim, appellant must show his attorney failed to use the skill and diligence of a reasonably competent attorney and that because of counsel's failure, appellant was prejudiced. *Sanders v. State,* 738 S.W.2d at 857. To establish prejudice here, appellant must show that counsel's alleged error had an adverse effect on the defense. *Jones v. State,* 773 S.W.2d 156, 158 (Mo.App., E.D. 1989). Appellant's burden requires a showing that there is a "reasonable probability" that but for the alleged error, there would have been reasonable doubt regarding ap-

pellant's guilt. *Id.* In making a determination as to whether a "reasonable probability" exists, the court must consider the totality of the evidence. *Id.*

As such, we find no prejudice here. Even if counsel for appellant had prevailed on an objection regarding appellant's prior statement, considering all the evidence available to the court, we still find sufficient proof to support the finding that appellant's absence from his sentencing hearing in June of 1987 was willful. Not only did appellant not appear for sentencing in June of 1987, he was not found and arrested until nearly a year and a half later. During that time, appellant made no effort to contact his attorney or the court regarding his sentencing. Appellant was discovered residing outside the State of Missouri. As a condition of appellant's bond stated that appellant was not to leave Missouri for any reason, appellant's absence from this State, as well as his lack of contact with court officials, leaves us with the firm impression that appellant's failure to appear at his sentencing hearing was willful and intentional. Because this evidence weighs so heavily against appellant, even if we should find his counsel ineffective for failing to object, we still find no prejudice. Appellant must satisfy both the prejudice and performance prong to prevail on a claim of ineffective assistance of counsel. *Jones v. State,* 773 S.W.2d at 158. Appellant has failed to show any prejudice. Point denied.

■ Appellant's final point on appeal espouses error in the denial of his Rule 29.15 motion in that his original defense attorney in the assault and armed criminal action case, David Crosby, was a prosecutor with the Jefferson County Prosecutor's Office during appellant's prosecution for those charges and for the failure to appear charge. Appellant claims this was a conflict of interest which denied him his rights to a fair trial and due process. Additionally, appellant argues he was denied effective assistance of counsel because of his trial counsel's failure to move to disqualify

6. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the Jefferson County Prosecutor's office due to this conflict.

David Crosby's testimony at the 29.15 evidentiary hearing established that he did conduct the defense of appellant at the preliminary hearing on the assault and armed criminal action charges sometime in early August, 1986. Shortly thereafter, Mr. Crosby withdrew from appellant's case, left the Public Defender's Office, and joined the Jefferson County Prosecutor's Office. Though appellant was tried and convicted on the assault and armed criminal action charges during the time that Mr. Crosby was employed by the Prosecutor's office, Crosby neither participated in the prosecution nor discussed the case with the attorney in charge of the prosecution.[7] However, appellant contends Mr. Crosby's initial representation of appellant on the assault and armed criminal action charge and subsequent employment with the Jefferson County Prosecutor's Office caused a conflict of interest which carried over to the failure to appear case.

We disagree. Appellant has cited us to no cases which stand for the proposition espoused here by appellant: that prosecutor Crosby's association with the public defender's office during the proceedings on the assault and armed criminal action charges should disqualify the entire Jefferson County Prosecutor's Office from participating in the prosecution of appellant on the failure to appear charge. Appellant refers us to a substantial list of cases holding that where an attorney once represented a defendant on a criminal charge and subsequently became a member of the local prosecutor's office during the prosecution of the same case, such was sufficient to establish the appearance of impropriety.[8] However, none of these cases can be read so broadly as appellant suggests, and we decline to expand the current law as we understand it.

As we find no basis for appellant's claim here, it follows that appellant could not have been denied effective assistance of counsel based on counsel's failure to move to disqualify the Jefferson County Prosecutor's office. Point denied.

Based on the foregoing, the decisions of the trial and motion courts are affirmed.

SMITH and STEPHAN, JJ., concur.

---

7. Mr. Crosby testified that he did appear in an ancillary lawsuit involving the surety of Everett Foster and a bond forfeiture in the amount of $40,000.00. However, Crosby stated he did not need, nor did he use any information he had obtained previously from appellant at that hearing.

8. *State v. Ross,* 829 S.W.2d 948 (Mo. banc 1992); *State v. Burns,* 322 S.W.2d 736 (Mo.1959); *State v. Croka,* 646 S.W.2d 389 (Mo.App., W.D.1983); *State v. Boyd,* 560 S.W.2d 296 (Mo.App., K.C.D. 1977).