**STATE of Missouri, Respondent,**

v.

**Daniel R. BOHANNON, Appellant.**

**No. 16523.**

Missouri Court of Appeals,
Southern District,
Division One.

June 13, 1990.

Motion for Rehearing or Transfer to Supreme Court Denied July 2, 1990.

Application to Transfer Denied
Sept. 11, 1990.

J. Bryan Allee, Columbia, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

A jury found appellant Daniel R. Bohannon guilty of escape from confinement and the trial court sentenced him, as a persistent offender, to ten years' imprisonment.

Appellant presents two points relied on, the first of which consists of components "A" and "B." Component "A" avers the evidence was insufficient to support the verdict; component "B" alleges there was a "fatal variance" between the amended information on which appellant was tried and the proof at trial. Appellant's second point maintains the charge should have been dismissed for lack of a speedy trial.

In determining the sufficiency of the evidence to support the verdict we view the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v. Guinan,* 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald,* 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that appellant was guilty. *State v. Bonuchi,* 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *Jackson v. Virginia,* 443 U.S. 307, 324, 99

S.Ct. 2781, 2791–92, 61 L.Ed.2d 560, 576–77 (1979).

So viewed, the evidence establishes that on May 8, 1986, Laclede County Deputy Sheriff Courtney Nichols transported appellant from Illinois to the Laclede County jail pursuant to a Laclede County arrest warrant for "two counts of sexual assault." They arrived around 6:30 p.m. Nichols read appellant the warrant, filled out a "booking form," and turned appellant over to jailer David Coutcher.

Coutcher handed appellant some sheets, towels and a blanket, and they ascended two flights of stairs to the cell block. Coutcher opened the cell block door and entered. Appellant, who was behind Coutcher, threw the bedding and towels at Coutcher. A sheet enveloped Coutcher's head. Coutcher "hollered, help, escape." Asked what happened next, Coutcher answered, "I got the sheet off my head and then ran down the stairs and saw [Nichols] getting up, and [appellant] going out the [outside] doors there."

Nichols testified he heard someone running down the stairs, looked up, and saw appellant. Nichols explained: "I tried to stop him and wasn't too successful. He knocked me down going out the door."

Coutcher and Nichols pursued appellant, capturing him within 15 or 20 minutes.

Appellant was the only defense witness. His version of the episode differed substantially from the testimony of Coutcher and Nichols. Inasmuch as the evidence is to be viewed favorably to the verdict, we need not set forth appellant's account.

■ At the time of the occurrence the crime of escape from confinement was defined by § 575.210, RSMo 1986.[1] It read, in pertinent part:

"1. A person commits the crime of escape ... from confinement if, while being held in confinement after arrest for any crime ... he escapes ... from confinement.

2. Escape ... from confinement is a class D felony except that it is:

. . . .

(2) A class C felony if the escape ... is facilitated by striking ... any person."

The amended information charged appellant with the class C felony of escape from confinement in that his escape was "facilitated by striking Jailer David Coutcher with bedding, and or any other member of the Laclede County Sheriff's Office."[2]

Component "A" of appellant's first point maintains the evidence was insufficient to support the verdict in that:

"... the only evidence of 'striking' presented at trial was that appellant threw bedding at sheriff's deputy Coutcher and that appellant knocked down sheriff's deputy Nichols without proof of physical injury. Such acts alone are not 'striking' within the meaning of section 575.210, RSMo 1986, and thus, the State failed to prove an essential element of the offense for which appellant was charged and convicted."

Appellant points out that "striking" is not statutorily defined in The Criminal Code. Appellant refers us to *State v. Mace*, 665 S.W.2d 655, 661 (Mo.App.1984), where the Western District of this Court utilized the definition of "striking" in Webster's Third New International Dictionary (1971), which provides that striking means, among other things, "to deliver a stroke, blow or thrust [as with the hand, a weapon or a tool]." Appellant also cites Webster's Ninth New Collegiate Dictionary (1987), wherein one of the definitions of "strike" is "to come into contact forcefully." According to appellant, such definitions indicate "some use of force to create an injury of some kind." Appellant asserts there was no evidence that Coutcher or Nichols sus-

---

1. Section 575.210, RSMo 1986, was enacted in H.C.S.S.B. 450, Laws of Missouri 1986, pp. 1091–1114, effective March 17, 1986, some seven weeks before the incident whence this case arose.

2. The amended information was filed at the start of the trial. The record contains no objection by appellant to its filing, no challenge as to its sufficiency, and no motion by appellant for a bill of particulars identifying "any other member" of the sheriff's office.

tained any "physical injury" as defined by § 556.061(20), RSMo 1986.

Appellant cites no case supporting his thesis that the striking must cause physical injury (as statutorily defined) in order to elevate the crime of escape from confinement to a class C felony under § 575.210.2(2). Nothing in the statute itself provides that physical injury is an element of the class C felony of escape from confinement. In order for escape from confinement to constitute a class C felony the statute requires only that the escape be facilitated by striking any person.

*State v. Edsall*, 781 S.W.2d 561 (Mo.App. 1989), cited by appellant, is not in point. There the accused was charged with the class A misdemeanor of assault in the third degree. The statute defining that crime, § 565.070, RSMo 1986, provided that a person commits such crime if he attempts to cause or recklessly causes physical injury to another person.

Physical injury is unmentioned in the statute defining the class C felony of escape from confinement. Furthermore, MAI–CR 3d 329.74, the verdict-directing instruction for escape from confinement, contains no requirement that the jury find the defendant caused a person physical injury in order to return a verdict of guilty of the class C felony of escape from confinement. Appellant's contention that the evidence was insufficient in that it failed to show he caused Coutcher or Nichols physical injury is without merit.

Appellant also argues in connection with component "A" of his first point that the evidence was insufficient to support a finding that he "struck" anyone. According to appellant, neither Coutcher's testimony that a sheet landed on his head when appellant threw the bedding, nor Nichols' testimony that appellant knocked him down when he (Nichols) tried to prevent appellant from fleeing, was sufficient to establish that appellant's escape was facilitated by striking a person. Appellant again attempts to invoke *Edsall.*

*Edsall* is inapposite. There the information charged the accused with causing the victim physical injury by striking him with the accused's fists. The victim testified he did not know whether the accused "hit me, shoved me, or what." All the victim could say was that during a scuffle his feet came off the floor and he fell, landing on a shoulder and arm. There was no evidence that the accused struck the victim, either with the accused's fists or anything else. This Court held the evidence was insufficient to support a finding that the accused caused physical injury to the victim by striking him and that the accused could not be convicted of causing physical injury by striking the victim when the evidence showed, at best, only that the accused in some manner forced the victim to fall, possibly receiving an injury when he struck the floor. 781 S.W.2d at 565.

In the instant case Nichols did not equivocate. He testified, "[Appellant] knocked me down going out the door." On cross-examination Nichols flatly denied that he "lunged" at appellant and slipped. While Nichols failed to specify which part of appellant's anatomy struck which part of Nichols' anatomy, Nichols' testimony undeniably supports a finding that he was propelled from a standing position to the floor when appellant came into forceful contact with him, and that appellant was thereby able to get past him and escape. We hold that Nichols' testimony was sufficient to support a finding that appellant facilitated his escape by striking Nichols. That being so we need not, and do not, decide whether Coutcher's testimony that a sheet came to rest on his head when appellant threw the bedding is sufficient to support a finding that appellant facilitated his escape by striking Coutcher. Component "A" of appellant's first point is denied.

■ Component "B" of appellant's first point alleges the proof failed in that the only allegation of "striking" in the amended information was that he threw bedding at a sheriff's deputy, whereas the evidence showed only that appellant allegedly knocked Nichols down while escaping.

As noted earlier, the amended information alleged that appellant's escape was "facilitated by striking Jailer David Coutcher with bedding, and or any other member

of the Laclede County Sheriff's Office." It is evident from appellant's argument that he construes the above allegation as an averment that the only "striking" he did was striking the deputies *with bedding.* Appellant argues the amended information never put him on notice that the State would endeavor to prove he facilitated his escape by knocking Nichols down. According to appellant, inasmuch as throwing bedding was the only "striking" specified in the amended information, any attempt to prove that any other type of striking facilitated his escape "would be in fatal variance with the charge pleaded in the [amended] information."

We do not read the amended information as narrowly as appellant. We do not interpret it as alleging that appellant facilitated his escape by striking Coutcher with bedding "and or" striking any other member of the sheriff's office *with bedding.*

While the amended information is scarcely an example of draftsmanship to be singled out for praise at a meeting of the Missouri Association of Prosecuting Attorneys, we believe a fair reading of it imparts the meaning that appellant allegedly facilitated his escape by striking Coutcher with bedding "and or" striking any other member of the sheriff's office, but not necessarily with bedding.

As observed earlier,[3] appellant did not challenge the sufficiency of the information and he filed no motion for a bill of particulars. If he was uncertain about the "striking" the State intended to prove in regard to "any other member" of the sheriff's office, appellant could have filed a motion for a bill of particulars. *State v. Tibbs,* 772 S.W.2d 834, 842[6] (Mo.App.1989).

Appellant maintains, however, that "striking" is a "generic term" requiring elaboration of the conduct charged. He cites no case holding that "striking" is a generic term.

As a general rule it is enough to charge the offense in the language of the statute alleged to be violated if the statute states all the constituent elements of the offense.

*State v. O'Connell,* 726 S.W.2d 742, 746[5] (Mo. banc 1987); *Tibbs,* 772 S.W.2d at 842[5]. If, however, the statute uses generic terms in defining the offense, it is necessary to recite sufficiently the conduct constituting the offense in order to accomplish the purpose of the information. *O'Connell,* 726 S.W.2d at 746[5]; *Tibbs,* 772 S.W.2d at 842[5].

In *State v. Burch,* 740 S.W.2d 293 (Mo. App.1987), the accused was convicted of two counts of sodomy. On appeal he contended that the indictment used vague, indefinite and generic language, preventing him from adequately preparing his defense, in that the indictment failed to plead the exact nature of the deviate sexual intercourse. Affirming the conviction, the Eastern District of this Court held the specific combination of body parts through which the sexual act is effected need not be particularized in order to enable the accused to meet the charge and bar further prosecution. *Id.* at 295.

In *Pelham v. State,* 713 S.W.2d 614 (Mo. App.1986), a prisoner sought post-conviction relief from a conviction of first degree assault; the indictment had charged him with causing serious physical injury to the victim by striking him with a dangerous instrument. The prisoner contended, among other things, that the indictment was defective in that it failed to explain what the dangerous instrument was. This District of this Court held the indictment was not defective. *Id.* at 617[4].

In *Tibbs,* 772 S.W.2d 834, the accused was charged with resisting arrest by using or threatening to use violence or physical force. On appeal he argued that the information was fatally defective in failing to state with particularity how he used or threatened to use violence or physical force. This District of this Court held the information was sufficient. *Id.* at 842[6].

Applying *Burch, Pelham* and *Tibbs,* we reject appellant's contention that "striking" is a generic term requiring elaboration of the conduct charged.

---

**3.** Footnote 2, *supra.*

The amended information charged appellant in the language of the statute defining the class C felony of escape from confinement. We hold that the State's evidence that appellant knocked Nichols down when Nichols attempted to stop appellant was not a fatal variance from the "striking" of "any other member" of the Laclede County Sheriff's office alleged in the amended information.

*Edsall*, 781 S.W.2d 561, relied on by appellant, does not aid him. As noted earlier, in *Edsall* the accused was charged with causing the victim physical injury by striking him with the accused's fists. There was no evidence that the accused struck the victim with the accused's fists or anything else. If the victim sustained any physical injury at all, it occurred during a scuffle with the accused when the victim's feet came off the floor and he fell, landing on a shoulder and arm. There was, consequently, a failure of proof that the accused caused the victim physical injury by striking him.

In the instant case Nichols testified clearly and unequivocally that appellant knocked him down when he attempted to stop appellant from escaping. Nichols categorically denied he lunged at appellant and slipped to the floor. Appellant's contention that he "stands in the same position" as the accused in *Edsall* is meritless.

Appellant also argues that the verdict-directing instruction did not conform to the amended information's allegation of the "method" used in striking the deputies. However, component "B" of appellant's first point makes no reference to the verdict-directing instruction (or any other instruction). Appellate review will be made only of matters raised in the points relied on in the brief. *State v. Hanson*, 587 S.W.2d 895, 903[19] (Mo.App.1979); *State v. Hodges*, 575 S.W.2d 769, 773[8] n. 1 (Mo.App.1978). Appellant's complaint that there was a variance between the verdict-directing instruction and the amended information is therefore not cognizable in this appeal.

Component "B" of appellant's first point is denied.

Appellant's second point—a complaint that he was denied a speedy trial—is based on the following chronology.

According to appellant's testimony he was confined in the Laclede County jail from May 8, 1986 (the date of the incident on which the instant conviction is based) until January, 1987, when he was delivered to the penitentiary to serve two consecutive ten-year sentences for sexual assaults.

A warrant for appellant's arrest for the escape was issued June 22, 1988, some 25 months after the escape, and placed as a detainer against him at the penitentiary. The warrant was served on appellant July 12, 1988.

The original information charging appellant with escape was filed December 1, 1988. Appellant was arraigned on that information December 9, 1988. He entered a plea of not guilty.

The judge's docket sheet shows that on December 21, 1988, a request for speedy trial was filed. No copy of that document appears in the record on appeal.

On February 15, 1989, the case was set for jury trial June 29, 1989.

On June 13, 1989, appellant filed a motion to dismiss for lack of a speedy trial. The motion averred the delay "has resulted in serious prejudice to [appellant], all in violation of his constitutional rights." No specific prejudice was alleged.

The motion was heard June 23, 1989. Evidently no evidence was presented, as the entry on the judge's docket sheet reads: "Motion to dismiss for lack of speedy trial taken up. Arguments heard by Asst. P.A. & Pub. Def. Motion overruled."

Trial was held six days later, on June 29, 1989.

Appellant's second point asserts he was denied his right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States, by Art. I, § 18(a) of the Constitution of Missouri (1945), and by § 545.780, RSMo 1986.

In *State v. Bolin*, 643 S.W.2d 806 (Mo. banc 1983), the Supreme Court of Missouri

stated that although none of its decisions had ever specifically so held, that Court had treated Art. I, § 18(a) of the Constitution of Missouri and the Sixth Amendment to the Constitution of the United States as equivalent and the Court saw no reason to construe the Missouri provision as any broader in scope than the Sixth Amendment, after which the Missouri provision was patterned. *Id.* at 811 n. 5.

Section 545.780, RSMo 1986, cited by appellant, provides:

"1.  If defendant announces that he is ready for trial and files a request for a speedy trial, then the court shall set the case for trial as soon as reasonably possible thereafter.

2.  The provisions of this section shall be enforceable by mandamus.  Neither the failure to comply with this section nor the state's failure to prosecute shall be grounds for the dismissal of the indictment or information unless the court also finds that the defendant has been denied his constitutional right to a speedy trial."

Noncompliance with the statute is not grounds for dismissal unless the court determines that the accused was denied his constitutional right to a speedy trial. *State v. Loewe,* 756 S.W.2d 177, 181 (Mo.App. 1988).

Appellant correctly points out that 372 days elapsed between the date the arrest warrant for the escape was issued and the date he was tried.  For purposes of constitutional analysis, the protections of the speedy trial provisions attach when there is a formal indictment or information or when actual restraints are imposed by arrest and holding to answer a criminal charge. *Bolin,* 643 S.W.2d at 813.  Inasmuch as appellant was in the penitentiary when the arrest warrant for the escape was issued (June 22, 1988), and thus immediately available for service of the warrant, we shall assume, for the purpose of the instant case, that appellant's constitutional right to a speedy trial accrued June 22, 1988. *Cf. Bolin,* 643 S.W.2d at 813.

Determining whether an accused has been denied his constitutional right to a

speedy trial requires that we engage in a difficult and sensitive balancing process in which the conduct of both the prosecution and the accused is weighed. *Bolin,* 643 S.W.2d at 813; *Barker v. Wingo,* 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101, 116–18 (1972).  Four factors are examined: length of the delay, reason for the delay, the accused's assertion of his right to a speedy trial, and prejudice to the accused. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192[17], 33 L.Ed.2d at 116–17[29]; *Bolin,* 643 S.W.2d at 813[11].

### 1.  Length of delay.

In *Barker* the Supreme Court of the United States said that the length of the delay is to some extent a triggering mechanism, and until there is some delay which is presumptively prejudicial there is no necessity for inquiry into the other factors.  407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

In *State v. Thomas,* 625 S.W.2d 115 (Mo. 1981), a capital murder case, slightly less than a year elapsed between the accused's arrest and his trial.  Excluding the delay occasioned by the granting of his two motions for psychiatric evaluations, the interval between arrest and trial was less than four months. *Id.* at 125.  The Supreme Court of Missouri held that considering the seriousness of the crime, a delay of less than four months was not presumptively prejudicial. *Id.* at 125[25].

In *State v. Buckles,* 636 S.W.2d 914 (Mo. banc 1982), the accused was charged with capital murder and ultimately convicted of second degree murder.  At the time the felony complaint was filed the accused was in federal custody.  Some 15 months elapsed between the filing of the complaint and the date he was brought to trial.  The Supreme Court of Missouri held that the 15–month period was not *ipso facto* an inordinate or unconstitutional delay. *Id.* at 919.  The Supreme Court nonetheless proceeded to analyze the other *Barker* factors, thus implying that the delay was presumptively prejudicial. *Id.* at 919–20.

In *State v. Harris,* 673 S.W.2d 490, 493 (Mo.App.1984), a conviction of two counts

of possession of a controlled substance, the Eastern District of this Court assumed that a 15-month delay between indictment and trial was presumptively prejudicial.

In *State v. White*, 689 S.W.2d 699, 702[3] (Mo.App.1985), a manslaughter conviction, the Eastern District of this Court held that a 13-month delay between arrest and trial warranted further inquiry into the *Barker* factors, thus implicitly finding the delay presumptively prejudicial.

Nothing in the record of the instant case indicates that any of the 372-day delay between the date the arrest warrant for the escape was issued and the date appellant was tried was attributable to him. Consequently, we hold that the delay was presumptively prejudicial, requiring consideration of the other *Barker* factors.

### 2. Reason for the delay.

█ While the record is bare of any indication that appellant caused any of the delay, the record is likewise void of anything suggesting that the State made a deliberate attempt to delay the trial in order to hamper the defense. The transcript does reveal that at the time of appellant's trial, Coutcher was employed in Louisiana. It is thus inferable that the date for appellant's trial had to be fixed far enough in advance to enable the State to arrange for Coutcher's attendance. Nonetheless, it is ultimately the duty of the State to bring an accused to trial. *Bolin*, 643 S.W.2d at 814. The 372-day delay must therefore be weighed against the State, but not severely.

### 3. Appellant's assertion of his right to a speedy trial.

Although an accused has no duty to bring himself to trial, failure to assert the right will make it difficult for an accused to prove that he was denied a speedy trial. *Bolin*, 643 S.W.2d at 815.

Here, appellant filed his request for speedy trial December 21, 1988. By that time six months had elapsed since issuance of the arrest warrant for the escape (June 22, 1988), and more than five months had elapsed since service of the warrant on appellant (July 12, 1988). Appellant did not, therefore, immediately assert his right to a speedy trial.

The record reveals nothing regarding the trial court's jury trial schedule at the time appellant filed the speedy trial request, hence we cannot determine whether it would have been possible to try appellant any sooner. Given these circumstances, the delay in bringing appellant to trial, while chargeable to the State, is attenuated by appellant's delay in asserting his right to a speedy trial.

### 4. Prejudice to appellant.

Elements to be assessed in determining whether delay results in prejudice to the accused are: (1) prevention of oppressive pretrial incarceration, (2) minimization of anxiety and concern of the accused, and (3) alleviation of the possibility that the defense will be impaired. *Bolin*, 643 S.W.2d at 815[15].

In the instant case appellant was already in the penitentiary serving two consecutive ten-year sentences when the arrest warrant for the escape was issued; he remained incarcerated on those sentences through the date of the escape trial. Consequently, it was those sentences, not the escape charge, that caused appellant's pretrial incarceration.

*Bolin* recognizes that anxiety and concern exist in every criminal case, but that alone does not establish prejudice where the accused neither asserts nor shows that the delay weighed particularly heavily on him in specific instances. 643 S.W.2d at 815[16]. Appellant made no such showing here. Furthermore, the gravity of any "public obloquy" to which an accused might be subjected is lessened where he has already been convicted of other crimes. *Id.*

Finally, the record demonstrates no impairment of appellant's defense. Appellant testified in detail and with notable precision as to his version of the alleged escape, and he makes no assertion that any defense witness who would have been available had

the case been tried sooner became unavailable by reason of the delay.

Appellant argues he was prejudiced by his "sustained incarceration" in the Laclede County jail in that he was subjected to beatings by other inmates. Appellant ignores the fact that at the time the arrest warrant for the escape was issued, he was in the penitentiary and was returned to the Laclede County jail only for such periods as were necessary for prosecution on that charge. Only one assault occurred during those periods. The other alleged beatings described by appellant occurred while he was jailed from March, 1981, to February, 1982, on a sodomy charge.

It is also noteworthy that the trial court, in its sentence and judgment in the instant case, granted appellant 404 days "jail time" credit against the ten-year sentence and did not order that it run consecutively to the two ten-year sentences appellant was then serving. While it is doubtful that appellant was entitled to the 404 days credit, *see* § 558.031.1, RSMo 1986, he nonetheless received it. By reason of § 558.026.1, RSMo 1986, the escape sentence is running concurrently with the two consecutive ten-year sentences for sexual assaults, and appellant has made no showing that he will complete the latter sentences before he completes the escape sentence. The delay in trying the escape charge has consequently not resulted in appellant having to serve time he would not have had to serve had the escape charge been tried sooner. We find no prejudice to appellant from the delay in the instant case.

Balancing all of the factors heretofore discussed and weighing the conduct of both the prosecution and appellant, we hold that appellant's constitutional right to a speedy trial was not abridged. His second point is denied.

Judgment affirmed.

PREWITT and SHRUM, JJ., concur.

PARRISH, J., recused.

