**STATE of Missouri, Respondent,**

v.

**Robert David RAINE, Appellant.**

**Robert David RAINE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 41793.**

Missouri Court of Appeals,
Western District.

March 10, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 2, 1992.

David S. Durbin, Appellate Defender, Anthony C. Cardarella, Asst. Appellate Defender, Office of State Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Robert Raine appeals from his conviction for burglary in the first degree, § 569.160, RSMo 1986, burglary in the second degree, § 569.170, RSMo 1986, and forcible rape, § 566.030, RSMo 1986, for which he was sentenced to six years, ten years and thirty years respectively.[1] He also appeals the denial of his motion for post-conviction relief after an evidentiary hearing. These appeals have been consolidated in the instant action. The judgment of the trial court is affirmed. The judgment of the motion court is affirmed.

Raine presents the following points in his direct appeal, alleging that the trial court erred in: (1) finding him competent to proceed to trial because the court-ordered examination did not include an electroencephalogram (EEG) or a CAT scan; (2) sustaining the State's objection to the defense's offer of proof as to medical records concerning Raine's childhood injuries suffered as a result of an automobile accident and as to testimony from family of Raine's abnormal behavior and their opinions that Raine suffered from a mental disease or

---

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise stated.

defect; (3) overruling his motion to dismiss for lack of a speedy trial; and (4) overruling his motion for judgment of acquittal as the evidence was insufficient as a matter of law to support his conviction. In his appeal of the denial of his motion for post-conviction relief, Raine contends that the hearing court erred in not making a finding *sua sponte* that he suffered ineffective assistance of counsel because trial counsel failed to request a continuance so as to seek public funds to conduct a neurological examination of Raine.

Raine was originally charged by indictment with the commission of eleven offenses. His motion to sever was granted and the court ordered that count I, rape; count II, first degree burglary; count VII, felony stealing; and count VIII, burglary in the second degree; be tried together.

On November 8, 1986, Raine noticed an open window in an apartment building. He entered the apartment. Although no one was home at the time, three women resided at the apartment. Raine searched through the three bedrooms, taking various articles of clothing. He left the apartment through a sliding glass door, leaving it unlocked, and took the clothing home and put it away.

A.P., one of the women living at the apartment, returned to the apartment at approximately 11:15 p.m. She turned on the light in the living room and locked the front door. She then retired for the evening, falling asleep about midnight.

Raine returned to the apartment in the early morning hours, entering through the sliding glass door which he had left unlocked. A.P. awoke, saw a figure standing by her bed and began to scream. Raine placed his hand over her mouth, pushing her head down into the pillow. He told her to be quiet so she would not get hurt. Raine removed A.P.'s underwear and assisted A.P. in the removal of her sweatshirt. A.P. told Raine that a roommate and her boyfriend would be home soon in an attempt to get him to leave. Raine told her to get up. He walked her to the bedroom door and closed the door. After the door was closed he walked her back to her bed. He made her lie down next to the bed, then he tried to penetrate her but failed.

Raine asked A.P. questions about her boyfriend and other sexual matters. He also asked whether she had pants or a skirt and told her, "You're going outside with me." She refused. During the time Raine was questioning A.P. he was trying to achieve an erection. Finally succeeding, he raped A.P.

After completing the act, Raine told A.P. that she would be going outside with him. She refused and told him to leave, stating that she wouldn't tell anyone. He left while she was talking. She discovered that the sliding glass door was open. After telephoning her mother, A.P. immediately called 911.

Raine returned to the apartment on November 11, 1986, entering through the bathroom window. He stole some dirty underwear, a photograph of A.P. and some other items of clothing.

On November 21, 1986, Raine was interviewed by Detective Frank Mazzuca, a member of the Kansas City Police Department. Detective Mazzuca advised Raine of his *Miranda* rights. Raine signed a waiver of those rights and thereafter confessed to the crimes which are the subject of this appeal.

Raine went to trial on January 23, 1989. At that trial A.P. testified, detailing the circumstances of the rape. She was not able to identify Raine as the room was dark and her assailant was behind her. Physical evidence was also introduced at the trial and Raine's confession was entered into evidence. The jury found him guilty of first degree burglary, rape and burglary in the second degree. He was acquitted of felony stealing. Raine filed a *pro se* Rule 29.15 motion for post-conviction relief on January 25, 1990. Counsel was appointed and an amended motion was filed on March 26, 1990. After an evidentiary hearing, the 29.15 motion was denied. Raine appeals from his conviction and from the denial of his 29.15 motion.

■ In his first point on direct appeal, Raine alleges that the trial court erred in

finding him competent to stand trial as no EEG or CAT scan was performed during his competency examination. Raine entered the dual plea of not guilty and not guilty by reason of mental disease or defect. Pursuant to § 552.020, the trial court ordered a mental examination to determine Raine's competency. Raine then filed a motion for a physical examination. In its order granting Raine's motion, the trial court pointed out that no neurological testing had been performed. The court then ordered "that the Director of the Department of Mental Health, or his designee, conduct neurological testing of defendant."

During a hearing on the competency motion, Dr. Stephen Mandracchia, a clinical psychologist with the Missouri Department of Health, testified that he had Raine perform the Halstead–Reitan Neuropsychological Testing battery. This is a seven or eight hour test battery which primarily tests cognitive intellectual type functions, but also tests motor type functions to assess neurological or neuropsychological difficulties. Dr. Mandracchia found that Raine did not suffer from any neurological or neuropsychological defects. This was the consensus of the experts who testified.

Doctor Enrique Vera, a physician certified by the American Board of Psychiatry and Neurology, conducted a neurological examination of Raine which consisted of an interview and asking Raine to perform certain tasks. He testified that he did not perform a CAT scan or EEG because Raine had no neurological or neuropsychological defects. He explained that "[t]here was no indication or hint of any symptom that E.E.G. could answer. The same thing would go for the brain scan."

Doctor Syed Shabbir, a psychiatrist who testified at Raine's motion for additional medical examination, stated that he had interviewed Raine and reviewed his records, including reports on social history, mental evaluations, medical evaluations and a report of a previously administered EEG. Dr. Shabbir asked Raine questions about the role of the defense, the prosecution and the judge. Raine responded appropriately to all of those questions.

Raine suggests that his indigence prevented him from employing independent experts. He further claims a "disingenuous effort" on the part of the trial court in that its failure to require a CAT scan and EEG was the equivalent of a denial of the appointment of an expert physician to examine Raine, and is a violation of his equal protection rights. Raine places great significance on his claim that the trial court ordered the performance of a CAT scan and an EEG, and then failed to "use the full power and authority of the law to see that its directives [were] obeyed." The language of the trial court's order was that neurological testing of Raine be conducted, not that any specific neurological test be performed. Even assuming *arguendo* that the trial court originally intended a CAT scan or an EEG be performed pursuant to its order, the trial court was free to reconsider its ruling on Raine's Motion for Special Order Requiring Physical Examination of Defendant and could, at any time before final judgment, amend or vacate its interlocutory order. *Around The World Importing, Inc. v. Mercantile Trust Co.*, 795 S.W.2d 85, 88 (Mo.App.1990).

In this appeal, Raine does not assert that he lacked any capacity to understand the proceedings or to assist in his own defense. He merely asserts that additional testing should have been performed, an assertion at odds with the testimony of the experts. The record reflects that the requirements of § 552.020 were met and that there was no error even if the trial court reversed its original order to conduct further testing. Raine was examined by three experts, a clinical psychologist, a psychiatrist and a physician certified by the American Board of Psychiatry and Neurology. Raine was tested extensively through interviews, neurological examinations, reviews of prior medical and social history, and by the Halstead–Reitan Neuropsychological testing battery. No further testing would have been useful. Raine's Point I is denied.

■ The next argument that Raine makes concerning his direct appeal is that the trial court erred in sustaining the State's objection to a defense offer of

proof. The offer of proof, made at Raine's trial, took the form of testimony given by defendant's brothers, Terrance, Eric and William, Jr.; defendant's father, William, Sr.; and the girlfriend of William, Jr., Leticia Coates. Medical records relating to injuries that Raine suffered in an accident when he was six years old were also a part of the offer of proof. The testimony given by the witnesses included descriptions of Raine's behavior: He ate peaches and pork and beans straight from the can and hot dogs from the package; wore women's undergarments and clothing in private; was in the habit of stealing women's undergarments; ate nearly-raw meat in large quantities; didn't bathe for weeks at a time; bit into glass; intentionally ran his car into a light pole; could be physically abusive and violent when angered; and would punish himself by self-mutilation when other people were angry with him. Each witness testified that Raine was not mentally "right" and, further, that Raine suffered from a mental disease or defect. None of these witnesses testified as experts. Raine claims this evidence was material and relevant, and constituted substantial evidence of his lack of responsibility due to mental disease or defect at the time of the commission of the crimes.

It is difficult to address this point because of the way in which evidence was introduced, objected to and ruled on. Apparently the evidence was taken pursuant to an oral motion in limine to exclude the evidence as irrelevant, referred to in the record by defense counsel and the prosecution in general terms. In response to the oral motion in limine, the defense presented the evidence in the form of an offer of proof. No individual objections were made by the prosecution and thus no specific rulings were made as to the admissibility of testimony. At the end of said testimony, the trial judge ruled that the evidence was not admissible as to the witnesses' opinions that Raine suffered from a mental disease or defect excluding responsibility at the time of the offense. The court refused, however, to rule that the defense could not put witnesses on the stand. After being pressed for a ruling outside the presence of the jury, the trial court acquiesced, following defense counsel's statement that "the only issues in this case to which these matters are relevant would be the issues concerning Mr. Raine's competence at the time he made the statement and also bearing upon the issue of diminished mental capacity at the time of the offenses." Defense counsel assessed the situation as one in which the witnesses could only provide information that the court had ruled inadmissible. The judge agreed with that assessment.

The trial court's ruling as to whether these witnesses could testify that Raine had a mental disease or defect was proper. While a lay person may be allowed to testify as to another's mental condition if based upon adequate observations, it is not proper for the witness to state a conclusion concerning the ultimate issue for the jury, nor give an opinion as to the person's real or actual state of mind. *State v. Cason*, 596 S.W.2d 436, 440 (Mo.), *cert. denied*, 449 U.S. 982, 101 S.Ct. 397, 66 L.Ed.2d 243 (1980). In *State v. Fisher*, 773 S.W.2d 178 (Mo.App.1989), a minister was asked whether the defendant had a mental condition. He was not allowed to answer the question. This court held that the objection to the question was properly sustained because the witness was not "shown to be qualified as an expert witness entitled to give an opinion as to whether appellant was suffering from a mental disease or defect." *Id.* at 182.

Evidence of Raine's conduct observed by his family and their opinions that he was not mentally "right," as opposed to their conclusions that Raine had a mental disease or defect, was admissible if relevant. Evidence is relevant if it tends to confirm or refute a fact in issue or to corroborate evidence which is relevant and bears upon the primary issue in the case. *State v. Hardy*, 735 S.W.2d 153, 155 (Mo. App.1987). A trial court is vested with broad discretion with respect to questions of relevancy in criminal proceedings and its decision should only be overturned where that discretion is shown to be abused. *State v. Driscoll*, 711 S.W.2d 512, 516 (Mo.

banc), *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). To establish a legally sufficient defense of not guilty by reason of mental disease or defect, it must be demonstrated that Raine had a mental disease or defect and that as a result he was unable to appreciate the wrongfulness of his conduct or was unable to conform his conduct to that required by law. *State v. Foerstel,* 674 S.W.2d 583, 591 (Mo.App. 1984). Raine has the burden of proof to show by substantial evidence, these two elements. *Id.*

■ The evidence of Raine's conduct presented by these witnesses was mixed in character. Some of the evidence presented is clearly not relevant. For example, eating food from a can or bloody and underdone, is perhaps gauche, but not uncommon. So is the lack of regular bathing. Other portions of the evidence are arguably relevant, such as the medical records concerning Raine's head injury from an accident and his father's testimony as to the continuing behavioral changes he noticed in Raine after the accident. The same is true of the evidence of Raine's habit of stealing women's underwear, dressing in women's underwear and his self-mutilation. Of this arguably relevant evidence, however, evidence of his violent temper is potentially detrimental to Raine.

The determination of relevance is left to the sound discretion of the trial judge and on appeal the court determines if an abuse of said discretion has occurred. In the instant case, however, an issue other than relevancy is dispositive. "If several facts are included in an offer of proof, some admissible and others inadmissible, then the whole, if properly objected to, is inadmissible." *Biermann v. Gus Shaffar Ford, Inc.,* 805 S.W.2d 314, 324 (Mo.App. 1991). The trial court properly refused to treat the evidence as a unit until pushed by defense counsel to make a ruling on the offer of proof *in toto.* The defense presented the offer of proof as Raine's sole evidence of mental disease or defect. A proper objection of relevancy was made as to the evidence in the offer of proof and this objection was sustained. A portion of the evidence was inadmissible as irrelevant. In addition, the witnesses' conclusions that Raine suffered from a mental disease or defect were inadmissible as well. Under the rule enunciated in *Biermann,* the whole offer of proof was inadmissible. *Id.*

■ Nor can it be shown that Raine was prejudiced by the exclusion of such evidence as the excluded evidence was insufficient to require that a jury instruction be given on the issue, especially in light of the expert testimony available to negate Raine's claim of mental disease or defect. It is necessary to have substantial evidence to support instructing the jury on the defense of mental disease or defect excluding criminal responsibility. The excluded testimony of Raine's family and evidence of his head injury was evidence that "[d]efendant's conduct was abnormal, but there was no evidence that at the time of the acts charged that his mental condition was such as to prevent him from knowing or appreciating the nature, quality or wrongfulness of his conduct or that it made him incapable of conforming his conduct to the requirements of law. Absent such showing there was no substantial evidence to require an instruction on this issue." *State v. Carr,* 687 S.W.2d 606, 611 (Mo.App. 1985). Even if the evidence adduced in the offer of proof was determined to have been admissible as relevant, contrary to the above ruling, it still was insufficient to require an instruction to the jury. This point is denied.

■ Raine claims error in the trial court's denial of his motion to dismiss for lack of a speedy trial. "The right to a speedy trial guarantees to a criminal defendant that the state will move fast enough to assure the defendant of early and proper disposition of the charges against him." *State v. Loewe,* 756 S.W.2d 177, 181 (Mo. App.1988). Deprivation of the right to a speedy trial is not *per se* prejudicial to a defendant. *Id.* The Sixth Amendment right protects not only the defendant but society as well by keeping defendants from using long delays to their own advantage. *Id.*

There is no exact formula to determine when a delay is prejudicial and constitutes a denial of the right to a speedy trial. *Id.* Missouri has adopted the balancing test outlined in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and the prejudicial effect of the delay, if any, must be decided on a case by case basis. *State v. White*, 689 S.W.2d 699, 702 (Mo. App.1985). Four factors were identified in *Barker* to be used in assessing whether a defendant has been deprived of his right: length of delay, reason for the delay, the defendant's assertion of the right and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 492.

■ *The Length of the Pretrial Delay.* The record reveals that Raine was indicted on May 13, 1987 and was tried approximately twenty months later on January 23, 1989. "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. Twenty months can be deemed as presumptively prejudicial in this case. In *State v. Bohannon*, 793 S.W.2d 497 (Mo. App.1990), a delay of 372 days was held to be presumptively prejudicial in a case where the charge was escape from confinement. The *Bohannon* court examined other Missouri cases in terms of length of delay and the presumption of prejudice. *Id.* at 503–04. Using these cases as a yardstick, the length of the delay in the instant case is held to be presumptively prejudicial, and the other factors in the *Barker* balancing test must be examined.

■ *Reason for the Delay.* Reasons for the delay are weighed. Delays deliberately intended to hamper the defense are weighed heavily against the State. *White*, 689 S.W.2d at 703. Delays attributable to the State's negligence or overcrowded court dockets are weighed less heavily against the State. *Id.* Delays for valid reasons, such as unavailability of witnesses, are justified and are not weighed against the State. *Id.*

Raine claims that the State was responsible for most of the delay in this case; the record reveals otherwise. Raine was arrested on November 21, 1986. The record is nearly silent as to the proceedings between Raine's arrest and his indictment on May 13, 1987. He entered pleas of not guilty and not guilty by reason of insanity on May 14, 1987, the day after the indictment. The matter was set for trial on July 6, 1987. On July 1, 1987, Raine secured a continuance. He received another continuance on October 14, 1987. On October 21, Raine requested a mental examination, which the court ordered. He received yet another continuance on November 25, 1987. Further continuances were granted to Raine on February 24, 1988 and on April 6, 1988. By contrast, the State secured continuances on June 22, 1988 and on September 28, 1988. On November 30, 1988, the State again secured a continuance, but this was also the date of the competency hearing where Raine moved for a physical examination. The matter was set for trial on January 23, 1989.

Subsequent to the competency hearing on November 30th, evidence was heard on four different dates on Raine's motion to suppress and motion to dismiss, or in the alternative for severance. The charges against Raine were severed. On January 23, 1989, another hearing on competency occurred and the charges pending against Raine in the instant case went to trial. From the above chronology, it is evident that Raine was responsible for a major part of the delay. The State can be held solely responsible for only four months of the twenty-month delay. Although the record is silent as to the reasons for the State's continuances, there is no showing made that the delay chargeable to the State was a result of some deliberate action or caused by the State's negligence. *See State v. White*, 706 S.W.2d 498, 502 (Mo.App.1986).

■ *Defendant's Assertion of His Right.* Raine claims he asserted his right to a speedy trial at the time charges were pending against him on the basis of complaints filed by the prosecutor in the associate division. This claim is unsupported, as

the record on appeal does not include the proceedings on the original complaints as filed in the associate division. The record first reflects Raine's demand for speedy trial on November 30, 1988, eighteen months after the indictment was filed. "Although an accused has no duty to bring himself to trial, failure to assert the right will make it difficult to prove that he was denied a speedy trial." *Bohannon*, 793 S.W.2d at 504. In the instant case, the eighteen-month delay on Raine's part in asserting this right tends to mitigate any delay by the State in bringing him to trial. It must also be noted that once the request for a speedy trial was made, the cause went to trial within two months.

■ *Prejudice to the Defendant.* In determining whether the delay was prejudicial to the defendant, three concerns have been identified by the *Barker* court as being important: oppressiveness of pretrial incarceration; the heightened anxiety and concern of the accused; and the possible impairment of the defense. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. The prejudice complained of must be actual, not speculative, and apparent in or at least reasonably inferable from the record. *Loewe*, 756 S.W.2d at 182. Raine was incarcerated from his arrest on November 21, 1986, to the date of trial, January 23, 1989. Raine's general claim of prejudice based upon the length of his incarceration, however, establishes only minimal prejudice. He suffered from no loss of evidence or any source of possible evidence. There are no allegations made that any witnesses disappeared or were otherwise unavailable to the defense. Furthermore, although every defendant suffers from some anxiety and fear, Raine makes no assertion that the delay weighed particularly heavily upon him. *State v. Bolin*, 643 S.W.2d 806, 811 (Mo. banc 1983).

More important than the absence of serious prejudice, is the fact that Raine's actions in securing continuances were solely responsible for twelve of the twenty months of delay and his filing of pretrial motions contributed to the final two months of delay. The balance of the delay is attributable to continuances of four months solely at the request of the State, and two months between the arraignment of defendant and his original trial date. In balancing the *Barker* factors, it is apparent that Raine has failed to prove that he was deprived of his constitutional right to a speedy trial. Point denied.

■ In his final point on direct appeal, Raine claims that the trial court erred in overruling his motion for judgment of acquittal because the evidence as a whole was insufficient as a matter of law to support his conviction. He specifically contends that the forensic evidence adduced by the State was inconclusive at best and may even be viewed as exculpatory. "In addressing a challenge to the sufficiency of the evidence, an appellate court must view as true the evidence of the prevailing party and all reasonable inferences drawn from it and ignore all contrary evidence and inferences." *State v. Luna*, 800 S.W.2d 16, 19 (Mo.App.1990).

Raine alleges the evidence is insufficient as to his identity as the individual who perpetrated the crimes. Noting that A.P. was unable to identify her assailant, Raine points to the forensic evidence involving the rape. He relies upon testimony by Mr. Robert Booth, a chemist with the Regional Crime Lab in Kansas City, Missouri. Mr. Booth presented evidence as to blood type and secretor status based upon samples taken from vaginal swabs and from the underwear of the victim. These samples were taken from the rape kit provided by the hospital in which A.P. was examined after the rape. Mr. Booth was unable to determine whether Raine was a secretor because of putrefied saliva samples. However, Mr. Booth testified that Raine could not be excluded on the basis of the tests on the vaginal swabs. Part of Mr. Booth's testimony suggested that a third person might have been involved based upon samples from the victim's underpants. However, this evidence does not exclude Raine from being A.P.'s assailant. Raine had removed A.P.'s underwear before the rape. In dressing after the rape, A.P. was unable to remember from where she took the underwear and was unable to say whether

she had on dirty or clean underwear, as both were available to her.

Raine confessed to the crimes for which he was convicted. His confession is supported by the evidence on the record. Under § 566.030.1 "[a] person commits the crime of forcible rape if he has sexual intercourse with another person without that person's consent by the use of forcible compulsion." At trial, Detective Frank Mazzuca stated that Raine had confessed to entering the apartment, taking women's clothing and leaving the sliding glass door open. He further confessed that he later returned and had sexual intercourse with the victim to whom he was not married, without her consent. Not only is Raine's confession of the circumstances of the rape fully corroborated by the victim's testimony, but the burglary charges are as well. The articles Raine confessed to taking from the apartment were articles that were missing from the apartment according to the victim's account. In short, there was sufficient evidence to support Raine's conviction for rape, burglary in the first degree and burglary in the second degree. Therefore, the trial judge committed no error in denying Raine's motion for judgment of acquittal. Raine's final point pertaining to the direct appeal is denied.

 In his appeal from the denial of his Rule 29.15 motion for post-conviction relief, Raine claims that the hearing court erred in not, *sua sponte*, making a finding that Raine suffered ineffective assistance of counsel where counsel failed to request a continuance so that he could seek public funds with which to conduct a neurological examination upon Raine. This point has not been properly preserved as it is presented here on appeal for the first time. "Appellate review of a motion court's action is limited to a determination of the findings and conclusions of whether the motion court are clearly erroneous." *State v. Blankenship*, 830 S.W.2d 1, 16 (Mo. banc

1992). A claim is not properly preserved for review where it is not presented to the motion court. *Amrine v. State*, 785 S.W.2d 531, 535 (Mo. banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). Further, this court has found that additional neurological testing was not necessary. Accordingly, this point is ruled against Raine.

The judgment of the trial court is affirmed. The judgment of the motion court is affirmed.

All concur.